## NON-COMPETITION AGREEMENT

This NON-COMPETITION AGREEMENT ("**Agreement**") dated effective as of March [____], 2022, is entered into by and between Heather Hoelzer Kacachos and Thomas Kacachos (collectively, "**Seller Principals**"), having a mailing address for the purpose of this Agreement of 3401Lanes Mill Road, Oxford, Ohio 45056, and AMICUS MIAMI OF OHIO LLC, a Delaware limited liability company ("**Buyer**") having an address of 417 Lafayette Street, 7th Floor, New York, NY 10003.

## RECITALS

**WHEREAS**, Buyer and its Affiliates (as defined below) (individually and collectively, the "**Amicus Group**") are in the business of acquiring, owning and operating Student Housing Properties (as defined below); and

**WHEREAS**, pursuant to that certain Purchase and Sale Agreement dated as of October (the "**Purchase Agreement**") by and between Buyer and Seller Principals (the Seller Principals together with the Property Owners and Seller Parties, as defined in the Purchase Agreement, are collectively referred to herein as the "**Seller**"), Buyer is acquiring 100% of the ownership interests in one or more newly created limited liability companies that will be formed and wholly owned by Seller, which at Closing (as defined in the Purchase Agreement) shall own the properties constituting Student Housing Properties (and ancillary facilities) from Seller, which properties are owned and controlled by Seller Principals;

**WHEREAS**, the execution of this Agreement is a condition of Buyer's obligations under the Purchase Agreement, and Seller Principals are willing to enter into this Agreement in order to consummate the transaction contemplated by the Purchase Agreement;

**NOW THEREFORE**, in consideration of the foregoing and the mutual covenants herein set forth and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

## ARTICLE I
## DEFINITIONS AND INTERPRETATION

1.1     **Definitions**.    As used in this Agreement, the following terms shall have the meanings set forth below:

**Amicus Group**: Has the meaning set forth in the Recitals.

**Affiliate**: With respect to any Person, (i) any other Person that directly, or through one or more intermediaries, Controls or is Controlled by or is under common Control with such person; (ii) any other Person that is an officer, director, partner, member, principal, manager or trustee of or serves in a similar capacity with respect to such Person; or (iii) any member of the immediate family member of an officer, director, partner, member, principal, manager or trustee of or serves in a similar capacity with respect to such Person. For purposes hereof, the term "Control" of a

14231192.3

EXHIBIT 3

Person shall mean the power, directly or indirectly, to direct or cause the direction of management and policies of such Person, whether through ownership of voting interests, by contract or otherwise and the term "Controlled" has a correlative meaning.

**Agreement**: The meaning set forth in the introductory paragraph.

**Business Day**: Any day other than a Saturday, Sunday or any day that banks are not open for business in the State of Ohio.

**Non-Compete Territory**: The geographical area identified on **Exhibit A**.

**Person**: An individual, corporation, partnership, limited partnership, limited liability company, trust, unincorporated organization, association or other entity.

**Potential Student Housing Property**: A Student Housing Property located within the Non-Compete Territory identified by Seller Group for potential acquisition and/or development.

**Restricted Activities**: The meaning set forth in Article II.

**Seller Group**: Seller, Seller Principals and all of the Affiliates of any of them.

**Student Housing Property**: Any real property designed and used primarily for, or proposed to be developed and used for, the purpose of renting or leasing residential housing units to undergraduate students and/or graduate students. For avoidance of doubt, a Student Housing Property shall also include any property that contains a mix of commercial uses and residential housing units that are rented to undergraduate students and/or graduate students. It is further agreed that the properties being retained by the Seller and listed on **Exhibit B** (the "**Retained Properties**") shall not be considered Student Housing Property for purposes of this Agreement.

**Termination Date**: The meaning set forth in Article V.

1.2 **Capitalized Terms**. Capitalized but otherwise undefined terms used herein shall have the meanings given such terms in the Purchase Agreement.

## ARTICLE II
## NON-COMPETITION

Beginning on the date hereof and continuing until the Termination Date, no member of the Seller Group shall, directly or indirectly, alone or with others, compete with or engage in the planning, design, acquisition, development, construction, ownership, financing, management, investment, operation or leasing (collectively, the "**Restricted Activities**") of any Student Housing Property located within the Non-Compete Territory, except to the extent such activities are taken in pursuance of a Potential Student Housing Property that will be offered to Amicus Group in accordance with the terms of Article IV below.

14231192.3

## ARTICLE III
## REMEDIES

Each member of the Seller Group and Amicus Group acknowledges that a violation of any of the covenants set forth in this Agreement would cause irreparable damage to the party for whose benefit such covenant was intended which could not be adequately compensated by monetary damages. Each member of the Seller Group and Amicus Group therefore agrees that in the event of a violation or threatened violation by such party of any such party's covenants hereunder, the other party for whose benefit such covenant was intended shall be entitled to seek preliminary and permanent injunctive relief including, without limitation, a temporary restraining order, upon due notice, to restrain such violation, in addition to and without limiting any other remedy available to such party at law or in equity. In any legal action to enforce the terms of this Agreement, the prevailing party in such action shall be entitled to recover its reasonable attorneys' fees and costs from the other party.

## ARTICLE IV
## NOTICE OF PURCHASE OPPORTUNITIES

Promptly after any member of the Seller Group is approached by a seller of a Potential Student Housing Property or a broker, or otherwise identifies a Potential Student Housing Property, the Seller Group shall notify the Amicus Group or put the Amicus Group in touch with the appropriate parties to pursue such opportunity.

## ARTICLE V
## TERM

The term of this Agreement shall commence on the date hereof and shall end five (5) years from the date hereof (the "**Termination Date**").

## ARTICLE VI
## NOTICES

Any and all notices to be served hereunder shall be in writing and shall be personally delivered, or sent by reputable overnight courier for next Business Day delivery addressed to the intended recipient at its address set forth below, or sent by certified mail to the intended recipient at its address set forth below, or sent via electronic transmission to the intended recipient. The addresses and email addresses for the parties are as follows:

    If to Amicus Group:    Amicus II Investment Holdings LLC
                                        417 Lafayette Street, 7th Floor
                                        New York, NY 10003
                                        Attn: Robert Abelson, Managing Member
                                        Email: rob@amicus-properties.com

    with a copy to:            Pierce Atwood LLP
                                        100 Summer Street, 22nd Floor

14231192.3

Boston, MA 02110
Attn: Donald G. Lussier, Esq.
Email: dlussier@pierceatwood.com

If to Seller Group:  Heather Hoelzer Kacachos & Thomas Kacachos
3401 Lanes Mill Road
Oxford, Ohio 45056
Email:tkacachos@parkplacerealestate.net;
tkacachos@gmail.com

with a copy to:  L. Robert Bolin, Esq.
Bolin & Troy, LLC.
29 N. Beech Street
Oxford, Ohio 45056
Email: rob@bolintroy.com

or to such other address or email address as a party hereto may designate from time to time in a written notice served upon the other parties in accordance herewith. Any notice sent by reputable overnight courier as provided above shall be deemed delivered on the next Business Day after delivery to such courier. Any notice sent by mail as provided above shall be deemed delivered on the second Business Day next following the postmark date which it bears. Any notices sent by email to the addresses set forth above shall be deemed delivered when sent, provided that sender does not receive a "bounce back" email from the server stating that the message was not delivered.

## ARTICLE VII
## MISCELLANEOUS PROVISIONS

7.1  **Amendment**. This Agreement shall not be amended, altered or modified except by a written instrument signed by all the parties hereto.

7.2  **Severability**. If any provision of this Agreement is held to be illegal, invalid or unenforceable or shall terminate pursuant to this Agreement, such provision shall be fully severable and this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable or terminated provision never comprised a part hereof, and the remaining provisions hereof shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable or terminated provision or by its severance herefrom. If any provision of this Agreement or the application of such provision to any Person or circumstance shall be held invalid, the remainder of this Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid, shall not be affected. Notwithstanding the foregoing, if and such provision is held to be invalid, illegal or unenforceable due to its duration or scope of applicability, to the greatest extent permitted under law such provision shall be reformed so that it applies for a lesser duration or scope (as applicable) equal to the longest duration or greatest scope (as applicable) which is valid, legal or enforceable.

14231192.3

7.3     **Applicable Law**.  This Agreement shall be governed by the laws of the State of Ohio without regard to its conflict of law principles.

7.4     **Waiver**.  The failure to insist upon strict enforcement of any of the provisions of this Agreement or of any agreement or instrument delivered pursuant hereto shall not be deemed or construed to be a waiver of any such provision, nor to in any way affect the validity of this Agreement or any agreement or instrument delivered pursuant hereto or any provision hereof or the right of any party hereto to thereafter enforce each and every provision of this Agreement and each agreement and instrument delivered pursuant hereto.  No waiver of any breach of any of the provisions of this Agreement or any agreement or instrument delivered pursuant hereto shall be effective unless set forth in a written instrument executed by the party against which enforcement of such waiver is sought, and no waiver of any such breach shall be construed or deemed to be a waiver of any other or subsequent breach.

7.5     **Headings**.  The headings in this Agreement are inserted for convenience and identification only and are in no way intended to describe, interpret, define or limit the scope, extent or intent of this Agreement or any provision.

7.6     **Counterparts**.  This Agreement may be executed in multiple counterparts with separate signature pages, each such counterpart shall be considered an original, but all of which together shall constitute one and the same instrument.

7.7     **Binding Effect**.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

*[Signature Page to Follow]*

14231192.3

IN WITNESS WHEREOF, the parties have executed this Non-Competition Agreement as of the day and year first set forth above.

**BUYER**:

AMICUS MIAMI OF OHIO LLC

By:_____
Name: Robert Abelson
Title: Authorized Signatory

**SELLER PRINCIPALS**:

_____
Heather Hoelzer Kacachos

_____
Thomas Kacachos

*[Signature page to Non-Competition Agreement]*

14231192.3

# EXHIBIT A
## NON-COMPETE TERRITORY



14231192.3

# EXHIBIT B

# Retained Properties

| CAMPUS CONDOS |
|---|
| 19 VICKIE ANDA #1 |
| 19 VICKIE ANDA #2 |
| 19 VICKIE ANDA #3 |
| 20 VICKIE ANDA #1 |
| 20 VICKIE ANDA #2 |
| 20 VICKIE ANDA #3 |
| 26 VICKIE ANDA #1 |
| 26 VICKIE ANDA #2 |
| 26 VICKIE ANDA #3 |
| 27 VICKIE ANDA #1 |
| 27 VICKIE ANDA #2 |
| 27 VICKIE ANDA #3 |
| 35 VICKIE ANDA #1 |
| 35 VICKIE ANDA #2 |
| 35 VICKIE ANDA #3 |
| 36 VICKIE ANDA #1 |
| 36 VICKIE ANDA #2 |
| 36 VICKIE ANDA #3 |
| 41 VICKIE ANDA #1 |
| 41 VICKIE ANDA #2 |
| 41 VICKIE ANDA #3 |
| 49 VICKIE ANDA #1 |
| 49 VICKIE ANDA #2 |
| 49 VICKIE ANDA #3 |
| 111 JACQUELINE #1 |
| 111 JACQUELINE #2 |
| 111 JACQUELINE #3 |
| 119 JACQUELINE #1 |
| 119 JACQUELINE #2 |
| 119 JACQUELINE #3 |
| 127 JACQUELINE #1 |
| 127 JACQUELINE #2 |
| 127 JACQUELINE #3 |
| 133 JACQUELINE #1 |
| 133 JACQUELINE #2 |
| 133 JACQUELINE #3 |
| 141 JACQUELINE #1 |
| 141 JACQUELINE #2 |
| 141 JACQUELINE #3 |
| 149 JACQUELINE #1 |
| 149 JACQUELINE #2 |
| 149 JACQUELINE #3 |

| VICTORIA SQUARE |
|---|

14231192.3

| |
|---|
| 230 W CHESTNUT #1A |
| 230 W CHESTNUT #1B |
| 230 W CHESTNUT #1 |
| 230 W CHESTNUT #2 |
| 230 W CHESTNUT #3 |
| 230 W CHESTNUT #4 |
| 804 S ELM #1A |
| 804 S ELM #1B |
| 804 S ELM #1C |
| 804 S ELM #1 |
| 804 S ELM #2 |
| 804 S ELM #3 |
| 804 S ELM #4 |
| 804 S ELM #5 |
| 804 S ELM #6 |
| 804 S ELM #7 |
| 804 S ELM #8 |
| 819 S ELM #1A |
| 819 S ELM #1B |
| 819 S ELM #1C |
| 819 S ELM #1 |
| 819 S ELM #2 |
| 819 S ELM #3 |
| 819 S ELM #4 |
| 819 S ELM #5 |
| 819 S ELM #6 |
| 819 S ELM #7 |
| 819 S ELM #8 |

| VARIOUS |
|---|
| 316 SANDRA |
| 362 BRYANT |
| 518 BROOKVIEW |
| 520 BROOKVIEW |
| 621-631 LOCUST |
| 724 DANIEL A |
| 724 DANIEL B |
| 724 DANIEL C |
| 733 DANIEL A |
| 733 DANIEL B |
| 733 DANIEL C |
| 3242 LINWOOD |
| 3722 DRAKEWOOD |
| 3770 DRAKEWOOD |
| 4029 OXFORD-MILLVILLE |

14231192.3