## PROFITS INTEREST UNIT GRANT AGREEMENT

This Profit Interest Unit Grant Agreement (this "Agreement") is entered into as of the Grant Date as set forth on <u>Exhibit A</u> hereto, by and between Amicus II Manager, LLC (the "Company"), and Heather Hoelzer Kacachos and Thomas Kacachos (collectively, the "Grantee").

### Introduction

Subject to the terms and conditions of this Agreement, the Company is issuing to the Grantee on the Effective Date the number of Profit Interest Units in the Company as set forth on <u>Exhibit A</u> hereto (collectively, the "Units" or "Profits Interest Units"), as defined and described in the Operating Agreement of the Company, as modified from time to time (the "Operating Agreement"). The Units are intended to be "profits interests" for U.S. Federal income tax purposes. It is a condition of the issuance of the Units that the Grantee enter into this Agreement. Capitalized terms used in this Agreement without definition shall have the meanings given to them in the Operating Agreement.

NOW, THEREFORE, in consideration of services to be rendered by the Grantee to the Company and its subsidiaries and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. **Issuance of Units; Vesting and Forfeiture of Units.**

    (a) <u>Issuance of Units; Acceptance of Operating Agreement</u>. The Company hereby issues to the Grantee, and the Grantee hereby accepts from the Company, the Profit Interest Units. The Grantee hereby acknowledges receipt of a copy of the Operating Agreement and agrees to be bound by all of the terms and conditions thereof. Concurrently herewith, the Grantee shall execute and promptly deliver to the Company the Operating Agreement in the form delivered to the Grantee along with this Agreement (or such other form as the Company may reasonably require reflecting the Grantee's acquisition of the Profit Interest Units). The Profit Interest Units have, and shall be subject to, the terms and conditions of the Certificate of Formation and the Operating Agreement of the Company (as amended from time to time) and to the terms and conditions of this Agreement, including those set forth on <u>Exhibit A</u>. Except as otherwise provided in the Certificate of Formation, this Agreement (including its <u>Exhibit A</u>), and the Operating Agreement, the Profit Interest Units shall be identical to, and shall be accorded the same rights and privileges of, all other Units of the Company.

    (b) <u>Performance Based Vesting</u>. The Units shall vest on the terms set forth in the Vesting Schedule on <u>Exhibit A</u>.

2. **Reclassification.** In the event of any distribution of securities or interests of the Company, or any reclassification, recapitalization, reorganization or similar transaction affecting the Company's outstanding equity interests, any securities, interests or other property which by reason of such transaction are distributed with respect to any Units subject to this Agreement shall immediately be subject to all of the restrictions set forth in this Agreement.

**EXHIBIT 6**

3. **Binding Effect.** Subject to the transfer restrictions contained herein, this Agreement shall be binding upon, and inure to the benefit of, the Company and the Grantee and their respective heirs, estate, legal representatives, successors and assigns.

4. **Entire Agreement; Amendments.** This Agreement contains the full, final and exclusive statement of the agreement of the parties hereto with respect to the matters contained herein and therein. This Agreement may be amended or modified only by an instrument in writing signed by the Company and the Grantee. No party shall be deemed to waive any rights hereunder unless such waiver is in writing and signed by such party. A waiver in writing on one occasion shall not be construed as a consent to or a waiver of any right or remedy on any future occasion.

5. **Governing Law; Construction.** This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York. Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision hereof shall be prohibited by or invalid under any such law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating or nullifying the remainder of such provision or any other provisions of this Agreement.

6. **Counterparts.** This Agreement may be executed in any number of counterparts, and with counterpart signature pages, including facsimile counterpart signature pages, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

7. **No Employment Rights.** Nothing contained in this Agreement shall be construed or deemed to (a) require the Company to employ or be associated with the Grantee for any period or (b) create or evidence an employment relationship between the Company and Grantee. The Company and Grantee acknowledge and agree that Grantee will receive an IRS Form K-1, not an IRS Form W-2 or 1099, as applicable, in connection with the Units granted hereby.

8. **Award Subject to Management Committee Determinations.** The treatment of the Units under this Agreement is subject to reasonable interpretations, regulations and determinations established from time to time by the Management Committee including, but not limited to, provisions pertaining to rights and obligations with respect to withholding taxes and other requirements of applicable law. The Management Committee shall have the authority to interpret and construe the award of the Units under this Agreement and its decisions shall be final, binding and conclusive as to any questions arising hereunder.

9. **Investment and Other Representations.** The Grantee acknowledges that the Units are not being registered under the Securities Act of 1933, as amended (the "Securities Act"), based, in part, in reliance upon an exemption from registration under Securities and Exchange Commission Rule 701 promulgated under the Securities Act, and a comparable exemption from qualification under the applicable state securities law, as each may be amended

from time to time. By execution of this Agreement and in order to induce the Company to issue the Units, the Grantee makes the representations set forth below to the Company and acknowledges that the Company's reliance on federal and state securities law exemptions from registration and qualification is predicated, in part, on such representations.

(a) <u>No Intent to Sell.</u> The Grantee represents that he is acquiring the Units solely for her own account, for investment purposes only, and not with a view to or an intent to sell, or to offer for resale, in connection with any unregistered distribution of all or any portion of the Units within the meaning of the Securities Act or other applicable state securities laws. The Grantee will not make any sale, transfer, or other disposition of the Units, or any portion thereof, except in accordance with the terms hereof and of the Operating Agreement.

(b) <u>No Reliance on the Company.</u> In evaluating the merits and risks of an investment in the Profit Interest Units, the Grantee represents that it has and will rely solely upon the advice of its own legal counsel, tax advisors, and/or investment advisors and not any advice or representation from the Company.

(c) <u>Risk of Loss.</u> The Grantee represents that he understands that the value that the Units have depends on the fair market value of the Company after the date the Units are issued and that any investment in securities of a closely held company such as the Company is non-marketable, non-transferable and could require her capital to be invested for an indefinite period of time, possibly without return and at risk of loss.

(d) <u>Restrictions on Units.</u> The Grantee represents that he understands that (i) the Units are and will be characterized as "restricted securities" under the federal securities laws because the Units are being acquired from the Company in a transaction not involving a public offering, and (ii) under such laws and applicable regulations such securities may be resold without registration under the Securities Act only in certain limited circumstances.

(e) <u>Additional Restrictions.</u> The Grantee represents that he has read and understands the restrictions and limitations imposed on the Units hereunder and under the Operating Agreement.

(f) <u>No Company Representations.</u> The Grantee represents that at no time was any oral representation made to it relating to the acquisition of the Profit Interest Units and that it was not presented with or solicited by any promotional meeting or material relating to the Profit Interest Units.

(g) <u>Commitment.</u> The Grantee has adequate means of providing for his current needs and personal and family contingencies. The Grantee is financially able to bear the economic risk of holding the Units (and incurring obligations as a member of the Company as provided under the Operating Agreement) for an indefinite period.

(h) <u>Sophistication.</u> The Grantee has such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of holding the Units and of making an informed investment decision with respect to the acceptance of the Units.

14651641.2

**11.** **Notices.** All notices, demands and communications under this Agreement shall be made in accordance with the terms of the Operating Agreement.

**12.** **Tax Consequences and Code Section 83(b) Election.** The acquisition of the Units pursuant to this Agreement may result in adverse tax consequences that may be avoided or mitigated by filing an election under Section 83(b) of the Internal Revenue Code of 1986, as amended (the "Code"). Under current law, such election may be filed only within 30 days after the date on which the Grantee acquires the Units. The Grantee has reviewed with Grantee's own tax advisors the federal, state, local and other tax consequences of the transactions contemplated by this Agreement. The Grantee is relying solely on such advisors and not on any statements or representations of the Company or any of its agents. The Grantee understands that Grantee (and not the Company) shall be responsible for the Grantee's own tax liability that may arise as a result of the transactions contemplated by this Agreement and further that the fair market value of the Units awarded hereunder shall constitute compensation income to the Grantee. **The Grantee acknowledges that it is his sole responsibility, and not that of the Company or its representatives, to file a timely election under Code Section 83(b), even if the Grantee requests the Company or its representatives to make this filing on his behalf.** The Grantee agrees to comply with any reasonable valuation determinations that the Company makes with regard to the Units and further acknowledges that in the event of forfeiture, certain allocations of income and loss may be required for the Company to comply with the requirements of Section 704 of the Code and the regulations thereunder.

*[Remainder of Page Intentionally Left Blank; Signature Page Follows.]*

IN WITNESS WHEREOF, this Agreement has been executed as a sealed instrument on the date first above written.

The Company:

AMICUS II MANAGER LLC

By: _____
Name: Robert Abelson
Title: Manager

By: _____
Name: Austin Brooks
Title: Manager

The Grantee:

_____
Heather Hoelzer Kacachos

_____
Thomas Kacachos

[Signature page to Profit Interest Agreement]

5

14651641.2

**SIGNATURE PAGE
TO
OPERATING AGREEMENT
OF
AMICUS II MANAGER LLC**

By its execution and delivery of this signature page in the space provided below, the undersigned, intending to be legally bound hereby, (i) joins in and covenants and agrees to be bound by the terms and conditions of the Operating Agreement of Amicus II Manager LLC applicable to undersigned (as the same may hereafter be amended, amended and restated, supplemented or otherwise modified in accordance with the terms of the Agreement, the "Agreement"), (ii) authorizes this signature page to be attached to the Agreement or counterparts thereof and (iii) covenants and agrees that this signature page shall be evidence of the undersigned's intention to be legally bound by any amendments, amendment and restatements, supplements or modifications of the Agreement applicable to the undersigned hereafter approved in accordance with the Agreement, whether or not the undersigned specifically executes such amendment, amendment and restatement, supplement or modifications of this Agreement (except if the approval of such amendment, amendment and restatement, supplement or modification of this Agreement specifically requires approval by the undersigned, in accordance with the terms of the Agreement).

Date: _____ ___, 20___

**MEMBER:**

Sign Name: _____

Print Name: _____
(*if the Member will be an entity, print entity name*)

Print Title _____
(*if signing on behalf of an entity Member, print title*)

Address: _____
_____
_____

Email: _____

6

# Exhibit A

Grant Date – March [_____], 2022

Effective Date – January 1ˢᵗ 2021

Number of Units Granted – 60,000

Profit Interest Unit Threshold Amount at Grant Date – $250,000

Vesting – The Units shall vest in 5 equal installments of 12,000 Units (each, a "Tranche") upon each occurrence of an IRR Milestone. Upon the occurrence of any IRR Milestone, the Tranche related to such IRR Milestone, as well as all Tranches related to previous IRR Milestones, if any and only to the extent not otherwise vested before, shall vest as well. All Profit Interest Units that have not vested at the end of the last Measurement Date will be forfeited.

For purposes of this Agreement, the following terms shall have the following meanings:

"IRR Milestone". An IRR Milestone shall be deemed to have occurred if, at any time between the Effective Date and Measurement Date set forth in the Vesting Table below (each, a "Measurement Period"), if the Company has achieved either (i) the Target IRR indicated in the Vesting Table with respect to such Measurement Date or (ii) the MOIC, in each equal to or higher than the one set forth in the Vesting Table.

"MOIC". A multiple on invested capital equal to the quotient of (a) the sum of (x) the aggregate amount of all distributions made with respect to Class A Units prior to the applicable Measurement Date, and (y) the Fair Market Value of the Company determined in connection with a sale of all or substantially all the assets of the Company divided by (b) the aggregate Capital Contribution made to the Company in exchange for the issuance of Class A Units.

"Target IRR". A Target IRR shall be deemed to have been achieved if, at any time during the relevant Measurement Period, the fair market value of the Company, represents an annual rate of return on Capital Contributions to the Company equal to the Target IRR indicated with respect to the relevant Measurement Date in the Vesting Table below. Target IRR shall be calculated using the XIRR function of Excel. The calculation of the Target IRR shall take place within ninety (90) days of the last day of the Measuring Period of the respective Measurement Date and be reviewed by external auditor and approved by the Management Committee.

The following is the vesting table applicable to the Profit Interest Units:

| Vesting Target No. | Measurement Date | Target IRR | MOIC |
|---|---|---|---|
| 1 | The 3-year anniversary of the Effective Date | 10% | 1.33x |
| 2 | The 4-year anniversary of the Effective Date | 12% | 1.58x |
| 3 | The 5-year anniversary of the Effective Date | 15% | 2.01x |
| 4 | The 6-year anniversary of the Effective Date | 18% | 2.70x |
| 5 | The 7-year anniversary of the Effective Date | 20% | 3.58x |

7