## PROPERTY MANAGEMENT AGREEMENT

This Property Management Agreement (this "*Agreement*") made as of the _____ day of March, 2022 by and between the parties identified on the signature page to this Agreement (collectively referred to herein as "*Owner*"), and Park Place Manager LLC, a Delaware limited liability company, having a place of business located at 417 Lafayette Street, 7th Floor, New York, NY 10003 (hereinafter referred to as "*Manager*").

### WITNESSETH

1. <u>Relation</u>:  Commencing on the date hereof (the "**Effective Date**"), Owner hereby employs Manager as sole and exclusive renting and managing agent of the property portfolio owned by Owner with the property addresses set forth on <u>Exhibit A</u> attached hereto (hereinafter referred to, both collectively and each individually, as the "*Premises*"), upon the terms hereinafter set forth.  Manager hereby accepts such employment and agrees to use diligent efforts to manage, operate, maintain, service and repair the Premises, attract and retain tenants, and collect rents for the Premises. Manager covenants that it will operate the Premises pursuant to the terms of this Agreement and the direction of Owner and perform all obligations set forth herein.

2. <u>Duties and Responsibilities</u>:  In order to properly manage and lease the Premises, the Manager shall perform the following duties and undertake the following responsibilities:

   a. Owner and its duly authorized representatives, including its attorneys and accountants, shall have the right at all times to inspect the books and records and all supporting data in possession of Manager relating to the Premises upon reasonable notice to Manager.

   b. Advertise the Premises for rent, and display signs thereon.  The cost of such advertising and signage shall be at the expense of the Owner.

   c. Negotiate extensions or renewals of current leases in form and upon terms satisfactory to Owner.

   d. Collect rent or other income due or to become due and give proper receipts therefore and deposit same in a segregated account from all other monies, which account shall be controlled by the Owner and Manager.  Subject to the availability of funds in said segregated account, pay all bills and charges of the Premises, all of which shall be an expense to the Owner.  In the event the balance in the segregated account is at any time insufficient to pay disbursements then due, the Manager will immediately inform Owner.  In no event will the Manager be required to use its own funds to pay any such disbursements or assume any obligations of the Owner.

   e. Purchase necessary supplies and services for the Premises and to make and incur in the name of the Owner and for the Owner's account such expenditu[...]

{W14011877.4}

EXHIBIT

2

same as in the opinion of the Manager may be for the best interest for the Premises.

f.   Order all repairs and maintenance regarding non-budgeted items as shall in the opinion of the Manager be reasonably necessary and appropriate, without prior approval of the Owner.  The actual cost of such repairs and maintenance shall be an expense of the Owner.  Notwithstanding the foregoing, (i) it is agreed that any individual, non-budgeted repair or maintenance item which costs in excess of One Thousand Dollars ($1,000.00) shall require the prior written approval of the Owner unless, in Manager's reasonable judgment, the same are advisable in order to avoid the possibility of accident or injury; and (ii) the Manager shall have no obligation to oversee or manage any significant capital improvement work.

g.   Hire, discharge, supervise and manage the payroll for all labor and employees required for the operation and maintenance of the Premises at appropriate levels, and at hourly rates consistent with reasonable standards in the community for services of like kind.

h.   Establish rules and regulations and enforce these rules and regulations for the use and occupation of the Premises.

i.   Enter upon the Premises or any part thereof in the name of the Owner or Manager for the purpose of terminating any lease of the Premises or any part thereof, pursuant to any default of any tenant and to evict those in possession thereof.

j.   Subject to subsection (f) above, execute all contracts on behalf of Owner which shall be reasonably necessary and appropriate for the operation, maintenance, upkeep, preservation, or protection of the Premises or of the Owner's interest therein, as presently existing.  The amounts payable to third parties under said contract shall be an expense of the Owner.

k.   Manager shall upon reasonable notice and at reasonable times, meet with Owner or Owner's representatives to discuss the operations of the Premises.

l.   All deposits and receipts from the Premises shall be deposited in a checking account in the name of Owner and all withdrawals therefor shall be by Manager or Owner.  Owner shall have a full right at all times to audit said account upon prior notice to Manager.

m.   Manager shall use all reasonable efforts in the selection, direction and supervision of its employees for the Premises.

n.   Manager agrees to observe and comply, in all material respects, with any and all constitutional provisions, statutes, ordinances, laws or regulations of any governmental body pertaining to State or Federal labor laws, fair housing or fair employment including without limitation those prohibiting or making illegal

{W14011877.4}

2

discrimination on the basis of race, creed, color, sex, religion or national origin, in the rental of any units or any services rendered in connection therewith or in connection with employment practices.

3.  Duties of the Owner: The Owner will provide all necessary documents and records and fully cooperate with Manager in all matters with respect to this Agreement. The Owner will provide Manager with evidence of insurance, which evidence Manager shall examine to determine the adequacy of coverage. If necessary in the opinion of Manager additional insurance or changes in insurance coverage may be made upon the approval of Owner. Nothing herein shall be regarded or construed as imposing upon Manager any duty or obligation to pay out of Manager's own funds any bills, charges, or other expenses relating to or arising out of the operation or maintenance of the Premises.

4.  Employees: All employees required for the operation and maintenance of the Premises shall be deemed solely employees of the Manager. All salaries, wages, and other compensation of such employees for such operation and maintenance, including so-called fringe benefits, medical and health insurance, worker's compensation insurance and the like, shall be the responsibility of the Manager under this Agreement. The Manager shall be responsible for the preparation and timely filing of any required federal, state and city payroll tax returns for employees employed by the Manager.

5.  Insurance: Owner shall during the term of this Agreement provide and maintain comprehensive general liability insurance against claims for personal injury, death, and damage to property of third persons, property insurance and other insurance. All such policies of insurance shall include Manager as additional insured parties, and Owner shall deliver insurance certificates to Manager within 10 days of the commencement of the term hereof evidencing the same, which certificates shall require the insurer to provide Manager with 30 days notice prior to terminating any such policies. All insurance shall be in such form and with companies of sound reputation and financial standing as Owner shall reasonably determine, and shall contain riders or endorsements adequately protecting the interests of Manager as the Manager shall reasonably request.

6.  Assignment: Manager shall have the right to assign this Agreement, with Owner's prior written consent, which shall not be unreasonably withheld, conditioned or delayed. Manager shall deliver to Owner a copy of any fully executed instrument of assignment.

7.  Term: Subject to the provisions of Section 8 below, this Agreement shall be for an initial term of ten (10) years, commencing on the Effective Date. Thereafter, the term shall be extended automatically on an annual basis, each such extension to be for a one (1) year period. However, either party shall have the right to terminate this Agreement, for any or no reason, by giving the other party written notice at least ninety (90) days prior to the expiration of the term, stating that this Agreement will terminate at the end of the term.

8.  Termination:

    (a)    In addition to the rights of Owner under Section 7, above, and notwithstanding any provision hereof to the contrary, this Agreement may be terminated at any

time by the Owner by written notice given to the Manager for cause (as hereinafter defined) at any time, provided that Manager has first been given written notice setting forth the basis for such termination and a reasonable opportunity to cure (not to exceed thirty (30) days) the problems described, and failed to effect a cure within such reasonable time, except that Manager shall not be entitled to notice and an opportunity to cure more than one time in any twelve (12) consecutive month period with respect to any single problem or cause for termination. "Cause," as used above, shall mean (i) any breach of any material provision hereof by Manager; (ii) any appointment by court order of a receiver, liquidator or trustee for Manager; (iii) any filing of a bona fide petition against Manager under any bankruptcy, reorganization, or insolvency law which is not removed within ninety (90) days, (iv) any filing by Manager of any petition into voluntary bankruptcy or the request by such party for reorganization under any provision of any bankruptcy, reorganization or insolvency laws; or (v) the assignment for the benefit of creditors by Manager.

(b)     Notwithstanding any provision hereof to the contrary, this Agreement may be terminated at any time by Manager by written notice given to the Owner upon the occurrence of any of the following events:

(i)     Owner does not make funds available, or pay directly, any third party expenses relating to the Premises, within 30 days when such amounts originally became due.

(ii)    Owner breaches any material provision hereof, provided that Owner has first been given written notice setting forth the basis for such termination and a reasonable opportunity to cure (not to exceed thirty (30) days) the problems described, and failed to effect a cure within such reasonable time, except that Owner shall not be entitled to notice and an opportunity to cure more than one time in any twelve (12) month period with respect to any single problem or cause for termination.

9.     <u>Notice</u>:  The Owner shall keep Manager continually advised as to where and how the Owner can be reached, but any notice sent postage prepaid to the latest address of the Owner furnished to Manager in writing shall be deemed sufficient.  At the outset, the address to which notices to the Owner shall be sent shall be, and in care of:

If to Manager:          Park Place Manager LLC
                        c/o Amicus II Investment Holdings LLC
                        417 Lafayette Street, 7th Floor
                        New York, NY 10003
                        Attn: Robert Abelson, Managing Member
                        Email: rob@amicus-properties.com

{W14011877.4}

If to Owner:                    Heather Hoelzer Kacachos & Thomas Kacachos
3401 Lanes Mill Road
Oxford, Ohio 45056
Email:tkacachos@parkplacerealestate.net;
 tkacachos@gmail.com

10.    <u>Indemnification</u>:

    a.    The Owner shall indemnify, defend and hold Manager harmless with respect to liability and damages, costs and expenses in connection with any damage or injury whatsoever to persons or property arising out of the use, management, operation, occupation, ownership, maintenance or control of the Premises, except to the extent caused by Manager's gross negligence or willful misconduct. Manager shall not be responsible for the acts or omissions of contractors and other third parties who perform services at the Premises.

    b.    Owner agrees to pay all expenses incurred by the Manager, including without limitation, reasonable attorney's fees for counsel employed to represent the Manager or Owner in any proceeding or suit involving an alleged violation by the Owner or the Manager, or both, of any constitutional provision, statute, ordinance, law or regulation of any governmental body pertaining to State or Federal labor laws, fair housing or fair employment including, without limitation, those prohibiting or making illegal discrimination on the basis of race, creed, color, sex, religion or national origin, in the rental of any units or any services rendered in connection therewith or in connection with employment practices. Nothing herein contained shall require the Manager to employ counsel to represent the Owner in any such proceeding or suit.

    c.    Manager shall not be liable for pre-existing violations of the Premises, prior to the effective date of this Agreement, except Manager shall use reasonable efforts to notify Owner promptly of, and shall forward to Owner, any complaints, warnings, notices or summons received relating to such violations.

    d.    The Owner hereby authorizes the Manager to disclose the ownership of the Premises to any public official and the Owner agrees to defend, indemnify and hold harmless the Manager, its representatives, servants, agents and employees, of and from all loss, costs, expenses, and liability whatsoever which may be imposed on them or any of them by reason of any present or future violation or alleged violation of such laws, ordinances, rules or regulations.

    e.    Owner agrees that, except to the extent caused by Manager's gross negligence or willful misconduct, Manager shall not be liable for (i) any claims made by tenants at the Premises or third parties against Manager, the Owner or the Property (provided that Manager shall make or cause to be made such repairs at Owner's expense, so as to maintain the Premises in good working order), or (ii) any claims made by tenants or third parties against the Owner.

       f.      The rights, obligations and limitations on liability contained in this Section 10 shall survive termination of this Agreement.

11.    <u>Who is Bound</u>:  This Agreement shall be binding upon the successors and assigns of the Manager and upon the successors and assigns of the Owner.

12.    <u>Modification</u>:  This Agreement may not be modified, altered or amended in any manner except by an Agreement in writing executed by the parties hereto.

13.    <u>Governing Law</u>:  This Agreement shall be governed and interpreted, according to the laws of the State of Ohio whose courts shall be its sole judicial forum. In the event any party hereto initiates litigation to enforce any terms or conditions hereof, the prevailing party in such litigation shall be entitled to recover reasonable attorneys' fees and costs from the non-prevailing party.

14.    <u>Entire Agreement</u>:  This Agreement set forth the entire agreement between the parties and supersedes any prior agreement or understanding among them with respect to the subject matter hereof.

15.    <u>Execution</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original. Signatures transmitted via fax and/or email shall constitute and may be relied upon as originals.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS]*

IN WITNESS WHEREOF, the parties have executed this Property Management Agreement as of the day and year first above written.

**OWNER:**

**Contreras Park Condominiums, LLC**

By: _____
          Name:
          Title:

**Tres Walnut, LLC**

By: _____
          Name:
          Title:

**Calista Enterprises, LLC**

By: _____
          Name:
          Title:

**Hoelzer/Hoelzer Rentals, Inc.**

By: _____
          Name:
          Title:


_____
Heather Hoelzer Kacachos, individually


_____
Thomas Kacachos, individually

**MANAGER:**

**Park Place Manager LLC**

By: _____
          Name: Robert Abelson
          Title:   Authorized Signatory


*[Signature page to Property Management Agreement – Non-Student Properties]*

Exhibit A

Addresses of the Premises

| CAMPUS CONDOS |
| --- |
| 19 VICKIE ANDA #1 |
| 19 VICKIE ANDA #2 |
| 19 VICKIE ANDA #3 |
| 20 VICKIE ANDA #1 |
| 20 VICKIE ANDA #2 |
| 20 VICKIE ANDA #3 |
| 26 VICKIE ANDA #1 |
| 26 VICKIE ANDA #2 |
| 26 VICKIE ANDA #3 |
| 27 VICKIE ANDA #1 |
| 27 VICKIE ANDA #2 |
| 27 VICKIE ANDA #3 |
| 35 VICKIE ANDA #1 |
| 35 VICKIE ANDA #2 |
| 35 VICKIE ANDA #3 |
| 36 VICKIE ANDA #1 |
| 36 VICKIE ANDA #2 |
| 36 VICKIE ANDA #3 |
| 41 VICKIE ANDA #1 |
| 41 VICKIE ANDA #2 |
| 41 VICKIE ANDA #3 |
| 49 VICKIE ANDA #1 |
| 49 VICKIE ANDA #2 |
| 49 VICKIE ANDA #3 |
| 111 JACQUELINE #1 |
| 111 JACQUELINE #2 |
| 111 JACQUELINE #3 |
| 119 JACQUELINE #1 |
| 119 JACQUELINE #2 |
| 119 JACQUELINE #3 |
| 127 JACQUELINE #1 |
| 127 JACQUELINE #2 |
| 127 JACQUELINE #3 |
| 133 JACQUELINE #1 |
| 133 JACQUELINE #2 |
| 133 JACQUELINE #3 |
| 141 JACQUELINE #1 |
| 141 JACQUELINE #2 |
| 141 JACQUELINE #3 |
| 149 JACQUELINE #1 |
| 149 JACQUELINE #2 |
| 149 JACQUELINE #3 |

| VICTORIA SQUARE |
| --- |

{W14011877.4}

| |
|---|
| 230 W CHESTNUT #1A |
| 230 W CHESTNUT #1B |
| 230 W CHESTNUT #1 |
| 230 W CHESTNUT #2 |
| 230 W CHESTNUT #3 |
| 230 W CHESTNUT #4 |
| 804 S ELM #1A |
| 804 S ELM #1B |
| 804 S ELM #1C |
| 804 S ELM #1 |
| 804 S ELM #2 |
| 804 S ELM #3 |
| 804 S ELM #4 |
| 804 S ELM #5 |
| 804 S ELM #6 |
| 804 S ELM #7 |
| 804 S ELM #8 |
| 819 S ELM #1A |
| 819 S ELM #1B |
| 819 S ELM #1C |
| 819 S ELM #1 |
| 819 S ELM #2 |
| 819 S ELM #3 |
| 819 S ELM #4 |
| 819 S ELM #5 |
| 819 S ELM #6 |
| 819 S ELM #7 |
| 819 S ELM #8 |

| VARIOUS |
|---|
| 316 SANDRA |
| 362 BRYANT |
| 518 BROOKVIEW |
| 520 BROOKVIEW |
| 621-631 LOCUST |
| 724 DANIEL A |
| 724 DANIEL B |
| 724 DANIEL C |
| 733 DANIEL A |
| 733 DANIEL B |
| 733 DANIEL C |
| 3242 LINWOOD |
| 3722 DRAKEWOOD |
| 3770 DRAKEWOOD |
| 4029 OXFORD-MILLVILLE |