UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
(Cincinnati)

| | |
|---|---|
| AMICUS MIAMI OF OHIO, LLC<br><br>    Plaintiff,<br><br>v.<br><br>HEATHER HOELZER KACACHOS<br><br>    And<br><br>THOMAS KACACHOS<br><br>    Defendants. | Case No. 1:22-cv-355<br><br>Judge Michael W. McFarland<br><br>Magistrate Judge Karen L. Litkovitz |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

The only real dispute between the parties with respect to Plaintiff's Motion for Temporary Restraining Order is over whether a bond should be required and, if so, in what amount. Under the circumstances in this case, where Defendants Heather Hoelzer Kacachos ("Ms. Kacachos") and Thomas Kacachos ("Mr. Kacachos" and, collectively, "Defendants" or "Sellers") now represent that they have no desire to market or sell the subject property, the Court is well within its discretion to not require a bond. Plaintiff submits that no bond is warranted and that such request is well supported by Ohio law.

**ARGUMENT**

Amicus and Defendants entered into a Purchase and Sale Agreement ("PSA") for the sale of real property that set out the parties to the agreement, the properties to be sold, and the price to be paid for the properties. Ohio law requires nothing more. Nonetheless, in light of rapidly increasing inflation, Defendants developed sellers' remorse, demanded more money from Amicus,

1

and ultimately refused to close on the property sales when Amicus insisted that the sale continue as set out in the PSA. For months, Amicus has not had access to hundreds of thousands of dollars it had put into escrow pursuant to a PSA that Defendants now claim was "inchoate" all along. Defendants now seek to further damage Amicus by requiring it to tie up its money again, this time in a bond. Defendants have made that demand despite repeatedly representing to Amicus and its counsel that Defendants have absolutely no intent to market or sell the properties to anyone else during the pendency of this suit. In fact, Defendants, in their answer, claim that Amicus acted in bad faith in alleging that Defendants had failed to close on the PSA because they were seeking to sell the properties to others for a higher price. Despite Defendants' steadfast position that they are not trying to sell the properties and will not sell the properties, Defendants also insist that Amicus post a bond of *one million dollars* to secure the TRO to which Defendants were otherwise willing to agree.

## I. *Amicus has more than met its burden for a TRO, and has clearly established a high likelihood of success on the merits.*

The purpose of a restraining order is not to litigate the case in its infancy, nor is it necessary for a plaintiff to "prove his case in full" at this stage. *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012) (quoting *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007)); *see also* (Mem. in Supp. Pl.'s Mot. For T.R.O., Dkt. 2, pgs. 8-10). Rather, a TRO is designed to preserve the status quo, and requires that a plaintiff only "show more than a mere possibility of success." *Polymet Corp. v. Newman*, Case No. 1:16-cv-734, 2016 WL 4449641, *3 (S.D. Ohio Aug. 24, 2016). Plaintiff has shown it has more than a mere possibility of success on the merits and has shown it will be irreparably harmed without a TRO. Specifically, efforts by Defendants to encumber, sell, or otherwise transfer the Properties outlined in the PSA would prevent Plaintiff from acquiring the Properties–the entire purpose of

the PSA. Courts often grant TRO's for this reason. *See generally Graff v. Ohio Valley Truss Co.*, 2005-Ohio-6661, ¶ 5 (Ohio Ct. App. 4th Dist. 2005); *Hershhorn v. Viereck*, 500 N.E.2d 379, 380 (Ohio Ct. App. 10th Dist. 1985). Because Amicus faces irreparable harm if Defendants are not temporarily restrained from selling the properties, and Amicus has more than a mere possibility of success on the merits, Amicus is entitled to a TRO. *See Treesh v. Bobb-Itt*, No. 2:10-CV-211, 2010 WL 3769266, at *3 (S.D. Ohio Sept. 21, 2010) (explaining that, in deciding whether to grant a TRO "[n]o one factor is dispositive"); *Fries Bros., Inc. v. Baker Produce, LLC*, No. 1:14CV00067, 2014 WL 288887, at *1 (S.D. Ohio Jan. 24, 2014) (explaining that each factor "simply guides" the court in its analysis).

Amicus has far exceeded its necessary burden in proving it has a high likelihood of success on the merits as the PSA is a valid and enforceable contract under Ohio law. In Ohio, essential terms of a contract generally include the subject matter, identity of the parties bound, consideration, price, and quantity. *See N. Side Bank & Tr. Co. v. Trinity Aviation, LLC*, 2020-Ohio-1470, ¶ 15, 153 N.E.3d 889, 895 (Ohio Ct. App. 1st Dist. 2020). For agreements involving property, courts generally look for a definite price, including terms of payment, and that the property is adequately described. *See Schenley v. Kauth*, 122 N.E.2d 189, 191 (Ohio Ct. App. 9th Dist. 1953). A set closing date is not an essential term, nor does it prevent specific performance. *Park v. Acierno*, 826 N.E.2d 324, 331 (Ohio Ct. App. 7th Dist. 2005). Each of these requirements is met here. The PSA includes each of the necessary elements of a property contract, as it contains a clearly stated purchase price for seventy-five million dollars ($75,000,000) in PSA, § 3.1; identifies the terms of payment, as set forth in PSA, Art. 1, 3; and adequately describes the covered property, PSA, Art. 2. (Pl.'s Am. Compl., Exhibit A, Dkt. 20-1, Art. 1, Art. 3, & § 3.1).

3

In addition to the technical requirements of the contract, there must be an apparent "meeting of the minds" between the parties. *See generally Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St. 3d 366, 369 (1991). A meeting of the minds is apparent either from the existence of an offer, acceptance, and consideration, *Reedy v. Cincinnati Bengals, Inc.*, 143 Ohio App.3d 516, 521 (Ohio Ct. App. 1st Dist. 2001), or where "a reasonable person would find that the parties manifested a present intention to be bound to an agreement." *PNC Bank, N.A. v. Springboro Med. Arts, Inc.*, 2015-Ohio-3386, ¶ 27, 41 N.E.3d 145, 151-152 (Ohio Ct. App. 2nd Dist. 2015) (citations omitted). The Court in *PNC Bank* underscored that when parties enter into a signed, written agreement this proffers particularly strong evidence of a meeting of the minds. *Id.*; *see also Bank of New York Mellon v. Rhiel*, 2018-Ohio-5087, 155 Ohio St. 3d 558, 563 (2018) ("Generally speaking, a contracting party's signature manifests the party's intent to be bound by a contract's terms.").

Most importantly, the Sixth Circuit has recognized that "Ohio law does **not** require contracting parties to share a subjective meeting of the minds to establish a valid contract; otherwise, no matter how clearly the parties wrote their contract, one party could escape its requirements simply by contending that it did not understand them at the time." *216 Jamaica Ave., LLC v. S & R Playhouse Realty Co.*, 540 F.3d 433, 440 (6th Cir. 2008) (emphasis added). "What it does require is that the terms of the agreement establish an **objective meeting of the minds**." *Id.* (emphasis added). Thus, when examining whether a meeting of the minds has occurred under the "reasonable person" test, "courts properly consider only objective manifestations of intent" and "expressions of assent are generally sufficient to show a meeting of the minds . . . even if one party keeps a secret present intention to disregard his obligations" by "outwardly manifesting assent without intending performance." *Nilavar v. Osborn*, 127 Ohio App. 3d 1, 12, 711 N.E.2d

4

726, 733 (Ohio Ct. App. 2nd Dist. 1998), modified on reconsideration (May 12, 1998). So even if Defendants had a good faith argument that they did not intend to agree to sell the properties listed in the PSA when they initialed each and every page of the thirty-page PSA, that argument still would not be meaningful under the law because any reasonable person would believe that Defendants agreed to be bound by the PSA. *Prokos v. Jones*, 2019-Ohio-519, ¶ 38 (Ohio Ct. App. 4th Dist. 2019) (In reviewing a contract under the objective "reasonable person" test, the court underscored that the fact that the document "had been initialed by each party" and "[a]t the conclusion of the document, each party signed in his individual capacity" supported the conclusion that the parties were aware the agreement would be binding and that they had mutually assented to the terms.).

Despite claiming that there was never any agreement, Defendants also argue that the failure to close was the fault of Amicus. (*See e.g.,* Def.'s Mem. in Op. to Pl.'s Mot. for T.R.O., Dkt. 25, pg. 9). Yet Defendants fail to mention that Amicus offered repeated concessions to Defendants, including offering them a 1-year non-compete, with carve-outs, as well as being willing to take on the financial risk associated with the rent proration disagreement. Defendants' partial email production in Exhibit A to the Memorandum in Opposition only reaffirms that Defendants repeatedly engaged in promise-and-delay tactics. (Def.'s Mem. in Op. to Pl.'s Mot. for T.R.O., Exhibit A, Dkt. 25-1). This is exactly why the standard on a TRO only requires a plaintiff to show more than a mere possibility of success on the merits. The parties have not yet engaged in discovery, and a TRO briefing is not a hearing on the merits after a full and fair opportunity to discover evidence and develop testimony. Once Amicus has that opportunity, Amicus submits that the evidence will show that Mr. Kacachos repeatedly told Amicus that he is entitled to a higher price due to inflation–which increased as the PSA closing period approached, and was sought

5

without basis in the PSA. This alone warrants issuance of a TRO to protect Amicus from the irreparable harm that would occur if Defendants were to sell the any of the properties that have been promised to Amicus under the PSA.

## II. The Court need not require a bond in order to grant this TRO, as it is not a requirement in the Sixth Circuit.

Defendants have repeatedly asserted that "a bond is required as a prerequisite to granting injunctive relief under the federal rules." (Def.'s Mem. in Op. to Pl.'s Mot. for T.R.O., Dkt. 25, pg. 19). Notably missing from Defendants' Memorandum are any citations to case law that support this assertion. "[T]he Sixth Circuit has consistently held that while a trial court must exercise the discretion required of it by Fed. R. Civ. P. 65(c) and expressly consider the question of requiring a bond before issuing a preliminary injunction, **the actual requirement of a bond is discretionary with the trial judge**." *Greenpeace, Inc. v. Waste Techs. Indus.*, No. 4:93CV0083, 1993 WL 128732, at *3 (N.D. Ohio Jan. 21, 1993) (emphasis added). Accordingly, "whether a bond is needed is up to the discretion of the district court" and not a "prerequisite" as Defendants have posited. *Bunn Enterprises, Inc. v. Ohio Operating Engineers Fringe Ben. Programs*, No. 2:13-CV-357, 2013 WL 3147956, at *15 (S.D. Ohio June 19, 2013), aff'd, 606 F. App'x 798 (6th Cir. 2015). As such, the Court has the discretion to issue a TRO with no bond. *See Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995); *Planned Parenthood Sw. Ohio Region v. Yost*, No. 1:19-CV-00118-MRB, 2019 WL 1305762, at *4 (S.D. Ohio Mar. 21, 2019).

In light of the Sixth Circuit's clear precedent establishing that bonds are not a requirement to comply with the mandate of Federal Rule of Civil Procedure 65(c), Amicus maintains its request that the Court not require a bond. This is not only supported by the fact that each of the TRO factors point in Amicus's favor, but also the fact that a bond here would only further deepen the financial harm that Amicus has suffered as a result of Defendants' actions as it would compound

upon the over half-a-million dollars that Amicus has been forced to keep in escrow while repeatedly attempting to close on a deal that Defendants did not claim until months and months later was inchoate all along. *See Ohio State University v. Thomas*, 738 F. Supp. 2d 743, 757 (S.D. Ohio 2010) (finding that no bond was required because the preliminary injunction factors favored Ohio State, and "Ohio State would certainly [be] able to pay any potential damages awarded against it"). Meanwhile Defendants will not be harmed without a bond because they insist they are not interested in selling the properties to others at a higher price anyway. Without any risk of harm to Defendants, but enormous risk facing Amicus if the properties are sold and Amicus is unable to receive specific performance, the balance of equities plainly favors granting a TRO without bond. This is further bolstered by the fact that Amicus has shown far more than a mere possibility of success on the merits, even at this preliminary stage.

For all the foregoing reasons set forth herein and in Amicus's Memorandum in Support of Plaintiff's Motion for a Temporary Restraining Order, Amicus respectfully requests that this Court enter a Temporary Restraining Order, with no bond required, against Defendants.

Respectfully submitted,

*/s/ Aneca E. Lasley*
Aneca E. Lasley (0072366)
ICE MILLER, LLP
250 West Street, Suite 700
Columbus, Ohio 43215-7509
(614) 462-1085

*Attorney for Amicus Miami of Ohio, LLC*

7

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the foregoing was served by the Court's CM/ECF System on this August 8, 2022 to all attorneys of record.

*/s/ Aneca E. Lasley*
Aneca E. Lasley (0072366)