**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **AMICUS MIAMI OF OHIO, LLC** | : | **Case No. 1:22-cv-00355** |
| **Plaintiff** | : | **Judge McFarland** |
| **vs.** | | **Magistrate Litkovitz** |
| **HEATHER HOELZER KACACHOS, *ET AL.*** | : | **MOTION FOR** |
| | | **PROTECTIVE ORDER** |
| **Defendants** | : | |

Defendants Heather and Thomas Kacachos (collectively, hereinafter, "the Kacachoses"), move the Court to enter a Protective Order concerning any future proprietary and sensitive business records to be circulated in discovery or placed on the Court's Electronic Case Filing system ("ECF") in this case.

This Motion is supported by the parties' own Non-Disclosure Agreement, entered into before they began negotiating the potential sale of the portfolio of real properties at the heart of this dispute. It is further justified by both the Ohio Trade Secrets Act, the Federal Civil Rules, and Federal statutory law.

Prior to filing this Motion, counsel circulated a proposed Stipulated Protective Order, modeled after this Court's One-Tier Form Protective Order.

Other, further reasons for granting this relief are set forth in the accompanying Memorandum in Support, filed herewith.

Respectfully submitted,

**/s/ Edward P. Akin**
Edward P. Akin  0074357
Aronoff, Rosen & Hunt
2200 U.S. Bank Tower
425 Walnut Street
Cincinnati, OH 45202
(513) 241-0400
(513) 241-2877 (fax)
epakin@arh-law.com
*Trial Attorney for Defendants*

### MEMORANDUM IN SUPPORT

The Kacachoses' Motion for Protective Order is supported by three separate bodies of law. The parties agreed to keep their sensitive business information confidential, from the time Amicus Miami of Ohio, LLC ("Amicus") first reached out to discuss a potential purchase of the real estate portfolio, in July 2021. In furtherance of free and open discussion, and in frank recognition that many if not all the materials they sought from the Kacachoses and their management company would be considered sensitive business matters, even "trade secrets," the parties entered into a Non-Disclosure Agreement tightly restricting the uses of such information (hereinafter, "NDA", copy attached hereto as Exhibit **A**). The exchange of information was highly one-sided, and the NDA plainly was intended to protect the producing parties' acknowledged interest in keeping the materials confidential. The specific terms of the NDA are discussed further below.

Separate from and in addition to the parties' private law, expressed in a fully executed agreement, the Kacachoses' sensitive business information commands protection under both the Ohio Trade Secrets Act as well as Federal Civil Rule 26 and federal statutory law.

2

The Kacachoses reached out to Amicus, by and through counsel, in an effort to present the Court with an agreed protective order, pursuant to S.D. Ohio Rule 7.3. (A copy of the proposed Stipulated Protective Order circulated to Amicus's counsel is attached hereto as Exhibit **B**.) Amicus expressed a preference to wait and see what manner of motion the Kacachoses would file. Time is of the essence here, as initial disclosures will soon be due, and much sensitive material has already been exchanged. Some trade secrets have been posted on the Court's online docket, and will be the subject of a separate Motion to Seal.

## LEGAL STANDARD

Federal Civil Rule 26 allows for protective orders to control access to sensitive or privileged information in discovery. That rule states, in part:

(c) PROTECTIVE ORDERS.

   (1) *In General.* A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

   * * * *

   (G) *requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way;* and

   (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Fed R. Civ. P. 26(c)(1)(G)-(H) (emphasis added).

In the exercise of its discretion, the Court may, upon a showing of good cause, issue a protective order limiting or restricting discovery. Fed. R. Civ. P. 26(c). Specifically, the Court may issue an order "requiring that a trade secret or other confidential...commercial

information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G); *Stout v. Remetronix, Inc.*, 298 F.R.D. 531 (S.D. Ohio 2014).

To sustain a protective order under Rule 26(c), the moving party must show "good cause" for protection from one (or more) harms identified in Rule 26(c)(1)(A) "with a particular and specific demonstration of fact, and distinguished from stereotyped and conclusory statements." *In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236 (6th Cir. 2016) (internal citations omitted). The specifically listed harms "available to support a protective order" include, "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

"In a discovery dispute, those asserting that the materials sought constitute trade secrets that are privileged from discovery bear the burden of establishing trade secret status." *Arnos v. MedCorp, Inc.*, 6th Dist. Lucas No. L-09-1248, 2010-Ohio-1883, 2010 WL 1730139, ¶ 20. "Conclusory statements as to trade secret factors without supporting factual evidence are insufficient to meet the burden of establishing trade secret status." *Id.* at ¶ 28, citing *State ex rel. Besser v. Ohio State Univ.*, 89 Ohio St.3d 396, 404, 732 N.E.2d 373 (2000). In addition, the party claiming to possess a trade secret must demonstrate that it has taken "some active steps to maintain its secrecy in order to enjoy presumptive trade secret status." *Id.*

A protective order applies to exchanges of discovery under Fed. R. Civ. P. 26. It is well-settled that a district court "may enter a protective order limiting the use or disclosure of discovery materials upon a mere showing of 'good cause.'" *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan,* 825 F.3d 299, 305 (6th Cir. 2016). A movant shows good cause if "specific prejudice or harm will result" in the absence of the requested protective order. *Id.*; *Father M. v. Various Tort Claimants (In re Roman Catholic*

*Archbishop)*, 661 F.3d 417, 424 (9th Cir. 2011). Protective orders are "often blanket in nature" and accord wide discretion upon the parties to decide whether particular materials fall under the order's protection. *Id*.

This Court recognizes and circulates templates for two tiers of protective orders. In this case, most if not all of the sensitive information already exchanged, which is considerable, has already been seen by not only Amicus's legal counsel, but its principals. Accordingly, the appropriate level of protection of here would shield sensitive business information from strangers to this litigation, under a Tier-One Protective Order closely modeled on this Court's template provided on its website. (Exhibit "B" hereto).

## LEGAL ARGUMENT

Many of the materials already exchanged between the parties are sensitive business documents, subject to confidentiality by the parties' own agreement, as discussed further below, and protected by both Ohio and federal statutes.

### A. The Parties Are Bound by a Non-Disclosure Agreement.

First, the parties are bound by a Non-Disclosure Agreement ("NDA"), entered into and fully executed prior to and separate from the Purchase and Sale Agreement ("PSA"). (Exhibit "A" hereto). The parties to the NDA were Park Place Real Estate Management, Inc. ("Park Place"), and Amicus Investment Holdings, LLC ("Amicus Investment"). Park Place is the management company that handles day to day operations for the portfolio of properties in this dispute. The NDA had an effective date of July 29, 2021, contemporaneous with what the parties agree was Amicus' first contact with the Kacachoses and Park Place.

The NDA aimed to promote candid and free-flowing exchange of information, while recognizing and protecting the sensitive nature of that information. The parties fully

executed the NDA prior to engaging in further negotiations. Curiously, Amicus declined to reference or attach it in their otherwise lengthy Complaint or Amended Complaint. Nevertheless, the NDA was a fully executed agreement, not dependent on any unripe contingencies. It obliged Amicus, as recipient of sensitive business information forwarded by the Kacachoses, to safeguard the same.

The NDA defined "Confidential Information" broadly, to "collectively refer to all information or material provided by the Company (that is, Park Place) to Recipient." The NDA required Recipient (that is, Amicus Investment) to keep confidential and "not disclose to any person or entity" the Confidential Information. (NDA, at § 2.1).

The NDA made its obligations binding upon "successors and assigns" to the parties. (NDA at § 8). Furthermore, Amicus Investment agreed that it would be responsible for any breaches of confidentiality by "any of its officers, employees, attorneys, lenders and potential lenders, investors and potential investors, partners, consultants, agents and representatives." Hence, it does not matter that Amicus rather than Amicus Investment filed this lawsuit, nor would it avail Amicus to claim its legal counsel made the decision to post confidential information on this Court's website. The NDA applies to the situation presented here. The information is available to any party or individual with a PACER account. The Court's electronic docket is presumed to be public information, indeed, specifically treated as such by the Sixth Circuit Court of Appeals in decisional law addressing motions to seal.

The Recipient's duty to preserve confidentiality under the NDA was equally broad. The NDA did not recognize any exception for the Recipient, *i.e.* Amicus Investment, launching legal proceedings against Park Place or its principals.

6

The NDA is, on its face, a duly executed written contract, amounting to private law governing the party's (and their successors' and assigns') relations concerning the confidential materials provided during negotiations.

The NDA stated it would remain in "full force and effect for one year" from the effective date. Amicus filed its lawsuit, and began posting some confidential material on the Court's ECF docket within that timeframe. The NDA should unquestionably relate back to the date of filing of the lawsuit, and govern treatment of confidential materials going forward in this lawsuit. The harm threatened to the Kacachoses (and Park Place) by disclosure of confidential materials to competitors far exceeds the burden that would be imposed on Amicus to handle the confidential materials in the manner required by the proposed One Tier Protective Order, modeled closely on this Court's own preferred template for such order.

**B. <u>Ohio's Trade Secret Act Also Protects Confidential Business Information.</u>**

Ohio law also confers protection on this information. As the Ohio Trade Secret Act defines a trade secret as follows:

> (D) "Trade secret" means information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
>
> (1) *It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.*
>
> (2) *It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.*

7

Ohio Rev. Code § 1333.61 (emphasis added).

The Ohio Supreme Court has established the following "six-factor test for determining whether information constitutes a trade secret pursuant to R.C. 1333.61(D)":

> (1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

Ohio Rev. Code § 1333.61(D). *See also State ex rel. Plain Dealer v. Ohio Dept. of Ins.*, 80 Ohio St.3d 513, 524-525, 687 N.E.2d 661 (1997), citing *Pyromatics, Inc. v. Petruziello*, 7 Ohio App.3d 131, 134-135, 454 N.E.2d 588 (8th Dist.1983). No single factor is dispositive. *MNM & MAK Enters., LLC v. HIIT Fit Club, LLC*, 2019-Ohio-4017, 134 N.E.3d 242, ¶ 25 (10th Dist.)

In 2013, the Ohio Supreme Court held that terms and amounts of subleases qualified as trade secrets. *State ex rel Luken v. Corporation for Findlay Market of Cincinnati,* 135 Ohio St.3d 416, 420, 988 N.E.2d 546, 550-51 (2013). *Findlay Market* centered upon the records in dispute, because it was a public records mandamus case. Findlay Market is a public market historically owned by the City of Cincinnati. The Relator/Appellant sought unredacted copies of lease agreements between the managing corporation and merchants who sublease retail spaces in the market. The City had provided redacted copies of those documents. As the Ohio Supreme Court noted:

> The corporation put on an expert who testified that the term and rental rate for subleases in the commercial context are secrets closely guarded by property managers and that knowledge of these items about competitors would be

> invaluable to property managers. Moreover, if such knowledge became public, it would impair the landlord's ability to get and keep tenants and "create a poisonous environment" among the tenants, who would inevitably compare notes. Disclosure of the information would put the corporation and Findlay Market at a competitive disadvantage.

*Findlay Market,* 135 Ohio St. 3d at 421, 988 N.E.2d at 550.

The Ohio Supreme Court easily concluded that "the redacted information derives independent economic value from not being generally known or readily ascertainable by others who might obtain economic advantage from knowing the information." *Id.* While the *Findlay* court concluded that the second *Besser* factor—the precautions taken by the holder of the information—was a closer call, the city still took precautions consistent with industry standard, keeping the only unredacted copies of the leases in a locked filing cabinet, accessible only to employees who needed the information. *Id.*

In this case, Ohio's statutory requirements for a "trade secret" are likewise met. The information posted on the Court's ECF system includes rent deposit information and other data which the Kacachoses do not share outside the parameters of their business. As to the second factor, the principals and officers of Park Place and the actual defendants in this case are Tom and Heather Kacachos, a married couple. They do not have, nor would they be expected to have business secrets from each other. The relatively small number of other employees of Park Place entrusted with this information have not breached its confidentiality. As to the Ohio Supreme Court's fourth factor, the Kacachoses and Park Place derive and preserve a competitive advantage by not having such information as their rent rolls publicly available. Combining discussion of factors 5-6, the Kacachoses and Park Place devote considerable effort to keeping the rent roll and deposit information confidential. It is difficult to see how competitors could secure that

information without considerable, even daunting time and expense, if they could secure it all. Nevertheless, using the information in this litigation, without a protective order (and frankly, a separate order sealing or redacting discrete parts of certain pleadings) threatens to make information that qualifies as trade secrets available to anyone possessed of a PACER account.

### C. Federal Statutory Law Also Protects Trade Secrets.

In addition to the parties' private law expressed in the NDA, and the Ohio Trade Secrets Act, as of May 2016 federal statutory law also confers protection on trade secrets. 18 U.S.C. § 1839(3); *see also Kondash v. Kia Motors America, Inc.*, 767 Fed. Appx. 635, 646 (6th Cir. 2019) (Griffin, J., dissenting).[1]

The federal Defend Trade Secrets Act and Ohio's Trade Secrets Act define trade secrets similarly. Both refer to similar types of sensitive information, and both require that the information be subject to reasonable measures to keep it secret, and both require that the information derives value from not being generally known. *Kondash v. Kia*, 767 Fed. Appx. At 646. Reviewing these similarities, the *Kondash* dissenter concluded the distinction between federal and state law might well be "one without a difference." Nevertheless, this discussion underscores that even under a strict application of *Erie* doctrine, with procedural matters rather than substantive claims at stake, statutory law would confer additional protection, coupled with the parties' NDA.

The parties in this lawsuit agree on little, but they can surely agree that the student rental market serving Miami University's Oxford, Ohio campus is a highly competitive

---

[1] In a detailed and spirited dissent, Justice Griffin suggested that under *Erie* doctrine, a motion for protective order might well be deemed procedural rather than substantive, meaning federal statutory law would properly apply.

market, featuring numerous participants with large portfolios. Amicus has already implicitly recognized that dynamic, by demanding an ancillary non-competition agreement from the Kacachoses, in connection with the PSA. Further, the parties expressly recognized the sensitive nature of the information by entering into a separate NDA before even commencing the flow of information relating to the purchase negotiations.

Moreover, the Oxford community and, more specifically, the participants in the local student rental market have a dynamic that would, simply put, likely circulate the confidential information to one and all if it were revealed to any participants. And these participants are competitors for the student rental market. If the information reflected in numerous of the exhibits filed herein fell into competitors' hands, it could place the Park Place-managed properties at a competitive disadvantage.

The Kacachoses hope Amicus will see the wisdom of not opposing this motion, as doing so would require it to take a stance contrary to the NDA, and in derogation of the statutory law discussed above. Nevertheless, if Amicus did choose to oppose this Motion, the Kacachoses are prepared to file affidavits detailing how they keep their sensitive business information under lock and key. But the NDA itself should furnish considerable evidence that at the outset of arm's length negotiation, the parties understood and acknowledged that the information passing from the Kacachoses' management company to Amicus Investment's principals and legal team was of a sensitive nature, and was not going to be released without pledges of protection committed to writing.

The one-tier protective order the Kacachoses propose is narrowly tailored to prevent disclosure to non-parties. The Kacachoses recognize that the information exchanged between the parties to date has not been limited to "attorney eyes only." The

one tier protective order is thus considerably less burdensome than an attorney eyes only order which would limit access to the party's legal counsel and experts. As noted, the Kacachoses closely modeled their proposed order on the Court's own preferred template.

## CONCLUSION

For all the foregoing reasons, the Kacachoses are entitled to a protective order. The Kachacoses' management company and Amicus already entered into an NDA acknowledging the sensitive nature of the information Amicus received, and pledging substantially the same protection sought here. That agreement was still in force at the time this lawsuit was filed. Furthermore, both state and federal statutory law accord protection on sensitive business information, which derives value from being kept under lock and key. The Kacachoses' business information qualifies, as the parties or their privies and agents have already recognized.

The proposed protective order is no more burdensome than required, and recognizes that the parties themselves, and not just their attorneys, have already scrutinized much of the information.

The Kacachoses have shown good cause for this motion under the legal standard set forth herein. Again, the NDA effectively underscores the sensitive and proprietary nature of the Kacachoses' business information, and acknowledges that it was proper for the receiving party to safeguard it as such. Amicus cannot oppose this motion without disavowing their own NDA. The Court should enter the One Tier Protective Order, addressing materials disclosed in discovery as well as those already exchanged between the parties, to the extent those are designated "confidential."

Respectfully submitted,


**/s/ Edward P. Akin**
Edward P. Akin  0074357
Aronoff, Rosen & Hunt
2200 U.S. Bank Tower
425 Walnut Street
Cincinnati, OH 45202
(513) 241-0400
(513) 241-2877 (fax)
epakin@arh-law.com
*Trial Attorney for Defendants*


<u>CERTIFICATE OF SERVICE</u>

I certify this document was filed electronically and served through the Court's ECF System on Aneca E. Lasley, aneca.lasley@icemiller.com, on August 30, 2022.


**/s/ Edward P. Akin**
Edward P. Akin