## NON-DISCLOSURE AGREEMENT

This Non-disclosure Agreement (the "Agreement") is made and entered into effective as of ~~6/24/2020~~ July 29, 2021 by and between _Park Place Real Estate Mgmt., Inc_ (the "Company"), and _Amicus Investment Holdings LLC_, located at 417 Lafayette (FL 7), New York, NY: 10003 ("Recipient"). In consideration of the mutual covenants and conditions contained herein, to induce the Company to provide certain information to Recipient and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties to this Agreement do hereby agree as follows:

1. Definition of Confidential Information. For all purposes of this Agreement, the term "Confidential Information" shall collectively refer to all information or material which is disclosed or provided by the Company to Recipient, either orally or in writing, concerning any aspect of the business or affairs of the Company. Notwithstanding the foregoing, Confidential Information shall not include information or material that (i) is publicly available or becomes publicly available other than as a result of a breach of this Agreement by Recipient, (ii) was already in Recipient's possession or known to Recipient prior to being disclosed or provided to Recipient by or on behalf of the Company, provided, that Recipient had no knowledge that the source of such information or material was bound by a contractual, legal or fiduciary obligation of confidentiality to the Company with respect thereto, (iii) was or is obtained by Recipient from a third party, provided, that Recipient had no knowledge that such third party was bound by a contractual, legal or fiduciary obligation of confidentiality to the Company with respect thereto, or (iv) is independently developed by the Recipient without reference to the Confidential Information.

2. Restrictions on Disclosure and Use. Recipient hereby covenants and agrees with the Company as follows:

    2.1. Non-disclosure. Recipient shall keep confidential, and shall not disclose to any person or entity, the Confidential Information, except (a) to those officers, employees, attorneys, lenders and potential lenders, investors and potential investors, partners, consultants, agents and representatives of Recipient to whom disclosure is reasonably necessary in connection with evaluating a potential opportunity (the "Transaction") or (b) as otherwise consented to in writing by the Company. Recipient shall take all reasonable actions necessary to ensure that the Confidential Information remains confidential and is not disclosed to any person or entity except in accordance with the terms of this Agreement.

    2.2. Request for Production of Confidential Information. In the event that Recipient is requested or required (by oral questions, interrogatories, requests for information or documents in legal proceedings, subpoena, civil investigative demand or other similar process or by any law, rule or regulation of any governmental agency or regulatory authority or otherwise) to disclose any of the Confidential Information, Recipient, to the extent feasible and permissible under the circumstances, shall provide the Company with prompt written notice of any such request or requirement so that the Company may seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Agreement. If, in the absence of a protective order or other remedy or the receipt of a waiver by the Company, Recipient is nonetheless compelled to disclose Confidential Information, Recipient may, without liability hereunder, disclose that portion of the Confidential Information which Recipient is required to disclose, provided that Recipient shall use reasonable efforts to preserve the confidentiality of the Confidential Information, including, without limitation, by cooperating with the Company, at the Company's expense, to obtain an appropriate protective order or other reliable assurance that confidential treatment will be afforded the Confidential Information.


EXHIBIT A

2.3. Ownership. The Company believes that the Confidential Information is owned solely and exclusively by the Company and shall remain the exclusive property of the Company. No right, title or interest in or to any of the Confidential Information or any material developed therefrom is transferred to Recipient hereby or by its delivery to Recipient hereunder.

2.4. Use. Recipient shall use or cause the Confidential Information to be used only to evaluate the Transaction and in a manner consistent with the terms and conditions of this Agreement.

2.5. Other Parties. Recipient shall be responsible for any breaches of this Agreement by any of its officers, employees, attorneys, lenders and potential lenders, investors and potential investors, partners, consultants, agents and representatives.

3. Return of Confidential Information. Recipient, upon accomplishing the limited purpose of evaluating the Transaction or at any time upon the request of the Company, shall immediately return to the Company all original Confidential Information and destroy all copies thereof and retain none for its files (except for any copies automatically retained in electronic storage or as required by any law, rule or regulation). Notwithstanding such return, Recipient shall continue to be bound by this Agreement.

4. Indemnification. Recipient shall indemnify and hold harmless the Company and its affiliates and their respective directors, officers, employees, agents and representatives from and against any and all losses, damages (excluding consequential, punitive, speculative, treble, indirect and special damages), costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) caused by or arising out of any breach of this Agreement by Recipient or any breach for which Recipient is responsible hereunder.

5. Equitable Remedies. Recipient hereby agrees that its failure to perform any obligation or duty which it has agreed to perform under this Agreement may cause irreparable harm to the Company, which harm cannot be adequately compensated for by money damages. It is further agreed by Recipient that an order of specific performance or for injunctive relief against Recipient in the event of a breach or default under the terms of this Agreement would be equitable and would not work a hardship on Recipient. Accordingly, in the event of a breach or default by Recipient hereunder, the Company, in addition to whatever other remedies are or might be available at law or in equity, shall have the right either to compel specific performance by, or to obtain injunctive relief against, Recipient, with respect to any obligation or duty herein or breach thereof.

6. No Licenses Granted. The Company grants no licenses, by implication or otherwise, under any patent, copyright, trademark, trade secret or other rights by disclosing Confidential Information under this Agreement.

7. Definitive Agreement. The Company and the Recipient understand and agree that no contract or agreement providing for any transaction involving the Company or Recipient shall be deemed to exist between Recipient and the Company unless and until a final definitive agreement has been executed and delivered by both parties, and the Company and the Recipient hereby waive in advance, any claims (including, without limitation, breach of contract) in connection with any such transaction unless and until Recipient and the Company shall have entered into a final definitive agreement. The Company and the Recipient also agree that unless and until a final definitive agreement between Recipient and the Company has been executed and delivered by both parties, neither Recipient nor the Company will be under any legal obligation of any kind whatsoever with respect to such a transaction by virtue of this Agreement except for the matters specifically agreed to herein. Each of the Company and Recipient reserves the right, in its sole discretion, to reject any and all proposals made by the other party and to terminate discussions and negotiations with the other party at any time.

8.   Miscellaneous. This Agreement shall be binding upon, and inure to the benefit of, and be enforceable by, the parties hereto and their respective successors and assigns. This Agreement constitutes the complete agreement between the parties hereto with respect to the subject matter hereof and shall continue in full force and effect until terminated by mutual agreement of the parties hereto. The section headings used herein are for reference purposes only and shall not in any way affect the meaning or interpretation of this Agreement. This Agreement shall be construed, performed and enforced in accordance with, and governed by, the internal laws of the Commonwealth of Pennsylvania, without giving effect to the principles of conflicts of law thereof, and each party consents to personal jurisdiction in such state and voluntarily submits to the jurisdiction of the courts of such state in any action or proceeding relating to this Agreement. Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision hereof is held to be invalid, illegal or unenforceable under any applicable law or rule in any jurisdiction, such provision will be ineffective only to the extent of such invalidity, illegality, or unenforceability, without invalidating the remainder of this Agreement. This Agreement may not be modified or amended and no provision hereof may be waived, in whole or in part, except by a written agreement signed by the parties hereto. No waiver of any breach or default hereunder shall be considered valid unless in writing, and no such waiver shall be deemed a waiver of any subsequent breach or default of the same or similar nature. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

9.   Term. This Agreement shall remain in full force and effect for one year from the date hereof.

*[remainder of the page intentionally left blank]*

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement effective as of the date first set forth above.

Company:

*Park Place Real Estate Mgmt., Inc.*

By: *Heather Kacachos*
Name: *Heather Kacachos*
Title: *Partner*

Recipient:

Amicus Investment Holdings LLC

By: *Austin Brooks*
Name:
Title:   Austin Brooks
         Co-Founder

-1-