**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **AMICUS MIAMI OF OHIO, LLC** | : | Case No. 1:22-cv-00355 |
| **Plaintiff** | : | Judge McFarland |
| | : | Magistrate Litkovitz |
| vs. | | |
| **HEATHER HOELZER KACACHOS, *ET AL.*** | : | MOTION TO SEAL OR REDACT PLEADINGS CONTAINING CONFIDENTIAL INFORMATION |
| **Defendants** | | |
| | : | |

    Defendants Heather and Thomas Kacachos respectfully move the Court to seal or redact certain already-docketed pleadings, to the extent they contain or link to exhibits containing proprietary or otherwise confidential information. The Complaint (DOC 1 and 6), Amended Complaint (DOC 20 and 22), Answer and Counterclaim (DOC 23 and 24), and Reply to Counterclaim (DOC 27 and 30) link to exhibits which contain sensitive business information. This information is not outcome determinative as to the legal issues in this case. Accordingly, sealing or redacting it would not impair any legitimate public interest in the legal issues presented here.

                                          Respectfully submitted,

                                      ***/s/ Edward P. Akin***
                                      Edward P. Akin  0074357
                                      Aronoff, Rosen & Hunt
                                      2200 U.S. Bank Tower
                                      425 Walnut Street
                                      Cincinnati, OH 45202
                                      (513) 241-0400
                                      (513) 241-2877 (fax)
                                      epakin@arh-law.com
                                      *Trial Attorney for Defendants*

**MEMORANDUM**

Even before the transaction at issue was negotiated and advanced, Amicus understood and agreed in writing that information tendered by the Kacachoses about the real estate portfolio and business operations would be kept confidential. In July 2021, the parties entered into a Non-Disclosure Agreement ("NDA"). Amicus's principals and/or legal counsel principally drafted the NDA, and the parties thereto—Park Place Real Estate Management, Inc., a company managing the subject properties, and an entity called "Amicus Investment Holdings LLC"—fully executed that agreement. By its express terms, the NDA was binding on successors, assigns, agents, and representatives. It is enforceable notwithstanding the fact that its signatories are not the identical parties involved in the present lawsuit.

As discussed and briefed in the Motion for Protective Order (DOC 31), Ohio law confers protection on "trade secrets," defined as:

> (D) . . . [I]nformation, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
>
> (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ohio Rev. Code § 1333.61.

Here, the documents posted on the Court's ECF system include portfolio rent rolls and rent deposit information and other data the Kacachoses do not share outside the

parameters of their business. The parties in this lawsuit agree on little, but they can surely agree that the student rental market serving Miami University's Oxford, Ohio campus is a highly competitive market, featuring numerous participants with large portfolios. If the financial details reflected in numerous of the exhibits filed by Amicus fell into competitors' hands, it could place the Kacachos-managed properties at a competitive disadvantage.

Furthermore, the sheer scale of the transaction, coupled with the publicly posted information concerning the Kacachoses' home address, could threaten their personal security in other ways, making them or their teenaged daughters targets of scams or worse. Accordingly, the Kacachoses also seek an order redacting the price term from the Purchase and Sale Agreement ("PSA). There is no legitimate public interest in the price. The outcome of this case turns on the interpretation of written contracts, and documents integrated into said instruments. As such, it is likely to be resolved on fairly well-settled legal principles. While some elements of the public might like to know what the proposed purchase price was, there would be scant legitimate reason for such interest. The principles governing resolution of this case would be much the same, even if the amount in controversy barely cleared the threshold for diversity jurisdiction.

The principal difference between a motion to seal or redact existing pleadings or exhibits thereto and a motion for protective order in discovery, lies in the public's presumptive interest in publicly filed documents. But two key points must be understood. First, under the NDA, Amicus never had the right to blare confidential information on a publicly accessible internet site, out of some sour grapes over a large-scale real estate business transaction that did not close. Nothing in the NDA that its agent or predecessor in interest drafted admits of any exception stating that, in the event the recipient or its

3

privies file a lawsuit, the NDA is rendered null and void. Amicus's failure to respect confidentiality covenants, and to exercise precaution when filing suit is symptomatic with respect to the one-sided and myopic approach to the subject litigation.

Second, the confidential information for which the Kacachoses seek shielding is not germane to the resolution of this case, which turns on contractual principles, including principles of interpretation, not on the minutia of sensitive financial information. Finally, this case, while vitally important to the parties, is not likely to be one of great public interest. No public entities are involved. This is not a patent infringement or other manner of intellectual property case, where the trade secrets themselves and legal disputes over rights thereto are in play. The sector of the public with a legitimate interest in the legal proceedings unfolding here could keep well informed about those issues without needing to see the narrow range of information which the Kacachoses seek to seal or redact.

The Kacachoses seek a narrowly tailored order sealing or redacting sensitive information such as rent rolls, deposits, property values and other information which they keep safeguarded. Entering such an order will not impair the public's right to follow the legal proceedings at bar here.

## **LEGAL STANDARD**

Federal Civil Rule 26 allows for protective orders to control access to sensitive or privileged information in discovery. That rule states, in part:

> (c) PROTECTIVE ORDERS.
>
> (1) *In General.* A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith

> conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> * * *
>
> (G) *requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way;* and
>
> (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Fed R. Civ. P. 26(c)(1)(G)-(H) (emphasis added).

The Ohio Supreme Court has established the following "six-factor test for determining whether information constitutes a trade secret pursuant to R.C. 1333.61(D)":

> (1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

Ohio Rev. Code § 1333.61(D). *See also State ex rel. Plain Dealer v. Ohio Dept. of Ins.*, 80 Ohio St.3d 513, 524-525, 687 N.E.2d 661 (1997), citing *Pyromatics, Inc. v. Petruziello*, 7 Ohio App.3d 131, 134-135, 454 N.E.2d 588 (8th Dist.1983).

No single factor is dispositive. *MNM & MAK Enters., LLC v. HIIT Fit Club, LLC*, 2019-Ohio-4017, 134 N.E.3d 242, ¶ 25 (10th Dist.).

"In a discovery dispute, those asserting that the materials sought constitute trade secrets that are privileged from discovery bear the burden of establishing trade secrets status." *Arnos v. MedCorp, Inc.*, 6th Dist. Lucas No. L-09-1248, 2010-Ohio-1883, 2010 WL 1730139, ¶ 20. "Conclusory statements as to trade secret factors without supporting

5

factual evidence are insufficient to meet the burden of establishing trade secret status." *Id.* at ¶ 28, citing *State ex rel. Besser v. Ohio State Univ.*, 89 Ohio St.3d 396, 404, 732 N.E.2d 373 (2000). In addition, the party claiming to possess a trade secret must demonstrate that it has taken "some active steps to maintain its secrecy in order to enjoy presumptive trade secret status." *Id.*

The Sixth Circuit addressed at length the different standards governing a motion to seal and a motion for protective order. Its discussion bears quoting here, as it lays out both the test for a motion to seal and the legal rationale undergirding that test:

> [T]here is a stark difference between so-called "protective orders" entered pursuant to the discovery provisions of Federal Rule of Civil Procedure 26, on the one hand, and orders to seal court records, on the other. Discovery concerns the parties' exchange of information that might or might not be relevant to their case.
> * * *
> "At the adjudication stage, however, very different concerns apply." The line between these two stages, discovery and adjudicative, is crossed when the parties place material in the court record. Unlike information merely exchanged between the parties, "[t]he public has a strong interest in obtaining the information contained in the court record."
>
> That interest rests on several grounds. Sometimes, the public's interest is focused primarily upon the litigation's result-- whether a right does or does not exist, or a statute is or is not constitutional.
>
> In other cases—including "antitrust" cases—the public's interest is focused not only on the result, but also on the conduct giving rise to the case. In those cases, "secrecy insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption." And in any of these cases, the public is entitled to assess for itself the merits of judicial decisions. Thus, "the public has an interest in ascertaining what evidence and records the District Court and this Court have relied upon in reaching our decisions."
>
> The courts have long recognized, therefore, a "strong presumption in favor of openness" as to court records. The burden of

>    overcoming that presumption is borne by the party that seeks to seal them. The burden is a heavy one: "Only the most compelling reasons can justify non-disclosure of judicial records." Moreover, the greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access. For example, in class actions—where by definition "some members of the public are also parties to the [case]"—the standards for denying public access to the record "should be applied … with particular strictness." An even where a party can show a compelling reason why certain documents or portions thereof should be sealed, the seal itself must be narrowly tailored to serve that reason. The proponent of sealing therefore must "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations."
>
>    In like fashion, a district court that choses to seal court records must set forth specific findings and conclusions "which justify nondisclosure to the public." That is true even if neither party objects to the motion to seal, as apparently neither did in *Brown v. Williamson*. (There, our court "reach[ed] the question" of the district court's seal "on our own motion.") As our decision there illustrates, a court's obligation to explain the basis for sealing court records in independent of whether anyone objects to it. And a court's failure to set forth those reasons—as to why the interests in support of nondisclosure are compelling, why the interests supporting access are less so, and why the seal itself is no broader than necessary-is itself grounds to vacate an order to seal. ("Appellate courts have on several occasions emphasized that upon entering orders which inhibit the flow of information between courts and the public, district courts should articulate on the record their reasons for do so.")

*Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305-06 (6 Cir. 2016) (internal citations omitted).

## **LEGAL ARGUMENT**

While the public has a legitimate interest in publicly filed pleadings, including, perhaps, those in this case, that interest does not extend to the materials which the Kacachoses seek to shield here. Those documents—including rent rolls and deposit information—constitute trade secrets under Ohio law. Federal statutory law largely mirrors the Ohio state law test. As explained in the earlier-filed Motion for Protective Order (DOC 31), the Kacachoses keep this information confidential from the general

7

public, and certainly do not share the same with competitors. The real estate portfolio in dispute consists overwhelmingly of student rental properties serving students attending Miami University's Oxford, Ohio campus. The market is quite competitive, and it would not be difficult at all for a competitor to wrest some advantage by using a PACER account to secure access to information ordinarily kept under lock and key.

There can be little, if any, legitimate public interest in the narrow range of documents the Kacachoses seek to seal. Those consist of a relatively scant number of pages of exhibits appended to the Complaint (DOC 1 and 6), Amended Complaint (DOC 20 and 22), Answer and Counterclaim (DOC 23 and 24), and Reply to Counterclaim (DOC 27 and 30), and any other exhibit currently docketed that reveals confidential rent roll and deposit information. In the *Shane* decision, the Sixth Circuit spoke at length about the likelihood that otherwise protectible trade secrets could be the basis, or partial basis, on which a legal decision turned, in certain types of cases, such as anti-trust or intellectual property disputes. But this case is neither of those. At its core, this case rests on the proper interpretation of a written instrument, including other ancillary written agreements integrated into the executed agreement. The confidential information which the Kacachoses seek to seal here would not be outcome determinative. That stark fact alone reduces *legitimate* public interest in the content of the material that the Kacachoses seek to seal. This is simply not a case where the outcome is likely affected by detailed factual or legal analyses of the sensitive information at issue.

The parties to this case were bound by their agents, predecessors, or representatives' execution of the NDA, as attached to and extensively discussed in the Motion for Protective Order (DOC 31). The NDA, negotiated and executed before the documents at issue were even tendered, is actually more persuasive evidence of their

8

proprietary nature than later-filed affidavits in a court case. The NDA memorializes the parties' acknowledgment that the documents should circulate only to the parties and their legal counsel. The NDA made such an understanding and obligation a firm condition precedent to disclosure in the first place. Finally, the NDA did not include any exception for broadcasting these sensitive documents if the recipient or its successor, representative, or assign wound up filing a lawsuit against the producing party, which disallowed public access to the financial details of a lease.

The "specific facts" supporting sealing are simple. As related in the Motion for Protective Order (DOC 31), the rent rolls and deposit information are not shared with the public, and further, those documents derive value precisely from being kept confidential. As such, they qualify as trade secrets under Ohio statutory law, including *State ex rel Luken v. Corporation for Findlay Market of Cincinnati,* 135 Ohio St.3d 416, 420, 988 N.E.2d 546, 550-51 (2013). (For brevity's sake, the Kacachoses incorporate herein by reference those portions of the Motion for Protective Order (DOC 31) which discuss the requirements of the Ohio Trade Secrets Act, and compare the requirements of comparable federal statutory law.

Further, the proposed sealing is quite narrowly tailored. Sealing the limited items at issue would leave the vast bulk of the pleadings *and appended attachments* open to public scrutiny. The Kacachoses seek only to seal portions of exhibits to the Complaint (DOC 1 and 6), Amended Complaint (DOC 20 and DOC 22), Answer and Counterclaim (DOC 23 and 24), and Reply to Counterclaim (DOC 27 and 30), which incorporate the rent rolls and deposit information, and the purchase price. Accordingly, the Sixth Circuit's requirement that the "seal itself be narrowly tailored" to serve the proffered rationale for sealing.

9

Finally, unless Amicus intends to oppose this motion, as a practical matter, it seems unlikely that any party would come before the Court and either oppose sealing, or seek to "unseal" the documents at issue after the fact. This lies in stark contrast to *Shane,* which involved a class action against Michigan's largest health care insurer. The lawsuit alleged price fixing schemes, which would naturally tend to make otherwise confidential documents highly relevant, possibly even dispositive of the claims at issue. After a settlement, and after certification of the proposed class of litigants, certain class members objected to the settlement, and self-insured businesses with health plans under the defendant insurer's coverage umbrella sought to unseal previously sealed records by seeking to intervene in the lawsuit. That obviously lies in stark contrast to this case. While this dispute is certainly of paramount importance to the parties, it is not a class action, nor do the causes of action require close scrutiny of confidential materials. Instead, the case will turn on the proper interpretation of written instruments, none of which would be sealed. There are no likely third party intervenors monitoring this case, with legitimate legal stakes in the outcome. Accordingly, the *Shane* court's concerns about legitimate public interest in the documents proposed for sealing simply is not present here, in stark contrast to that class action health insurance case, affecting many thousands if not millions of persons under Blue Cross Blue Shield of Michigan's broad coverage.

### **DOCUMENTS TO SEAL OR REDACT**

The specific material sought to be sealed or redacted here is scant indeed. The items consist of the following:

1) Purchase Price stated in Article III, § 3.1 of the PSA, and the specific amounts of deposits stated in Article III, § 3.2 of the PSA, which is Exhibit A of the Complaint and Amended Complaint (DOC 1-1, 6-1, 20-1, 22-1, all at Page 5 of 86).

2) Rent Roll identified as Exhibit C to the PSA (DOC 1-1, 6-1, 20-1, 22-1, all at Pages 38-51 of 86).

3) Purchase Price stated in Exhibit K of the Complaint and Amended Complaint (DOC 1-11, 6-11, 20-11, 22-11, all at Page 2 of 3).

4) Letter of Intent, which is Exhibit A to Plaintiff's Answer to Counterclaim (DOC 27-1 and 30-1).

5) In addition, the Answer and Counterclaim (DOC 23 and 24) includes an exhibit, Amicus's proposed "Closing Statement," which has the aggregate price term. The Kacachoses propose that reference also be redacted, though the Closing Statement (DOC 23-10 AND 24-10) could otherwise remain of record.

This is extremely narrowly tailored redaction and/or sealing, consistent with the Sixth Circuit's stated test for allowing same.

## **CONCLUSION**

For all the reasons set forth herein, and those stated in the Kacachoses' previously filed Motion for Protective Order (DOC 31), the items sought to be sealed here are narrowly tailored to serve the Kacachoses' legitimate trade secret interests. The vast bulk of the pleadings would remain open to public inspection. The parties' respective expectations and obligations in the NDA would be honored. And it is extremely unlikely that any third party intervenors would come along after the fact and seek to unseal the documents at issue.

This is a case of greater interest to the parties themselves, than to members of the public at large. To the extent the public, or any segment thereof, has a legitimate interest in this case, the sealing of the few documents at issue will not impair their understanding of the case. But a contrary result, leaving the items open to downloading by anyone with a PACER account, threatens to divulge the Kacachoses' trade secrets and sensitive personal financial information to no justifiable legal purpose or public policy purpose.

11

Respectfully submitted,

***/s/ Edward P. Akin***
Edward P. Akin  0074357
Aronoff, Rosen & Hunt
2200 U.S. Bank Tower
425 Walnut Street
Cincinnati, OH 45202
(513) 241-0400
(513) 241-2877 (fax)
epakin@arh-law.com
*Trial Attorney for Defendants*

CERTIFICATE OF SERVICE

I certify this document was filed electronically and served through the Court's ECF System on Aneca E. Lasley, aneca.lasley@icemiller.com, on September 22, 2022.

***/s/ Edward P. Akin***
Edward P. Akin