

Heather Kacachos <hkacachos@parkplacerealestate.net>

## Transition Questions
2 messages

**Tom Kacachos** <tkacachos@parkplacerealestate.net>　　　　　　　　　　　　　　　Wed, Feb 9, 2022 at 2:29 PM
To: Rob Abelson <rob@amicus-properties.com>, Austin Brooks <austin@amicus-properties.com>, Yvette Wall <yvette@wallcpa.us>, Heather Kacachos <hkacachos@parkplacerealestate.net>

There are a lot of details and transitions to wrap up. Is February 22 or late February a more realistic close date than Feb 15? Let me know your thoughts.

1) Health Care. We currently have United Health Care. I will probably keep the policy since heather and I are on it. It is a great plan with grandfathered pricing. Will you move John, Renee, Travis, and Joe to a different policy or do we want to figure out a way to keep this policy?

2) Payroll. Currently our payroll Company is Tower Rentals Maintenance, Inc. I will need to figure out how we wind this down (not really your problem but may require a little time) or maybe I keep it for me and Heather. How will employees be paid (w2 or 1099). They will want to know.

3) Automatic mortgage payments. Once we have a firm date I need to stop these payments. Sometimes the bank needs 3-4 business days.

4) Recently paid property taxes. We need to make sure these are reflected in the closing statement. They should be posting this week. I will send a summary of what was paid.

5) Current list of employees. W2 John, Renee (on call phone), Joe (on call), Travis. Contractors Damian, Tommy, Kyle (on call), Jimmy (on call). Between both of us we should be able to keep everyone employed. We could also trade hours of our crews to simplify costs and ensure better response times.

6) Closing statement. There's some debt that will require payoff statements once we have a hard closing date. Rob Bolin is sending me the title commitments now.

7) Construction Management agreement. Maybe we should finalize after the closing. I'm still open to it just want to make sure I can give you the amount of work and commitment you need.
8) Profit shares agreement. Have we reviewed this?

9) Just want to confirm that it is ok that we have some students at our non student buildings. I think Rob Bolin was adding our current list of properties as exempt for the non compete. The other item is determining the duration of the non compete. Obviously if we ever want to do anything in the future we will work with you as a partner.

10) I think the AMEX card is a great way to prevent confusion since we will still have accounts at Gillman and Home Depot. We will change our account names from Park Place to something else but this will take a little time.

11) The attorneys are still finalizing the title issues and objections.

12) Files. I will eventually need all files up to the close date in case of an audit. We can keep recent files at the office since you will need them also for various reasons.

13) How will the closing company be making the payment(s)? To Tres Walnut or to Tom and Heather? We still need to determine a price for each property. You mentioned before you were ok with me doing this.

14) 211 N University is not finished. We are currently installing mechanicals and the mason is starting soon. How are we finalizing those costs?

15) Offices for Tom and Jerry Baumann. I would like to figure out something for a 5 year period.

16) We currently provide housing for Joe Davis and John Broering in two of our non student properties.

17) We have a warehouse/shop building that we both can continue to utilize for storage, wood working, et



EXHIBIT 4

18) Transition Period after the closing. What type of help (if any) would you like from me and Heather.

19) Deed and legal description review. Rob Bolin is sending to me now.

Let me know if I missed anything. Thanks.

--
Tom Kacachos, P.E.
Vice President
Park Place Real Estate
116 E High Street
Oxford, OH 45056
(513) 839-0344
www.ParkPlaceRealEstate.net

---

**Yvette Wall** <Yvette@wallcpa.us>  Wed, Feb 9, 2022 at 3:20 PM
To: Tom Kacachos <tkacachos@parkplacerealestate.net>, Rob Abelson <rob@amicus-properties.com>, Austin Brooks <austin@amicus-properties.com>, Heather Kacachos <hkacachos@parkplacerealestate.net>

Hi Tom – Yvette here, my answers are in below

**From:** Tom Kacachos <tkacachos@parkplacerealestate.net>
**Sent:** Wednesday, February 9, 2022 2:29 PM
**To:** Rob Abelson <rob@amicus-properties.com>; Austin Brooks <austin@amicus-properties.com>; Yvette Wall <Yvette@wallcpa.us>; Heather Kacachos <hkacachos@parkplacerealestate.net>
**Subject:** Transition Questions

There are a lot of details and transitions to wrap up. Is February 22 or late February a more realistic close date than Feb 15? Let me know your thoughts.

1) Health Care. We currently have United Health Care. I will probably keep the policy since heather and I are on it. It is a great plan with grandfathered pricing. Will you move John, Renee, Travis, and Joe to a different policy or do we want to figure out a way to keep this policy?*[Yvette Wall]* We would like to keep the same benefits for the employees as they currently have, if you can share your agent on the health plan we can open a new plan under our company, I had assumed it would transfer, being your keeping it for you and Heather we will open ours. We will pay you for the pro-rated February costs that are ours, and begin March 1st on our plan.

2) Payroll. Currently our payroll Company is Tower Rentals Maintenance, Inc. I will need to figure out how we wind this down (not really your problem but may require a little time) or maybe I keep it for me and Heather. How will employees be paid (w2 or 1099). They will want to know.*[Yvette Wall]* W-2 if they are currently employees, 1099's for outside contractors. We will run payroll through our system

3) Automatic mortgage payments. Once we have a firm date I need to stop these payments. Sometimes the bank needs 3-4 business days.*[Yvette Wall]* Nothing for Amicus on this one

4) Recently paid property taxes. We need to make sure these are reflected in the closing statement. They should be posting this week. I will send a summary of what was paid.*[Yvette Wall]* These will be pro-rated by day, your calculations should go to your attorney and they will present to Fidelity the title company for insertion into the closing statement so you receive proper credits for the pre-payments.

5) Current list of employees. W2 John, Renee (on call phone), Joe (on call), Travis. Contractors Damian, Tommy, Kyle (on call), Jimmy (on call). Between both of us we should be able to keep everyone employed. We could also trade hours of our crews to simplify costs and ensure better response times.*[Yvette Wall]* Sounds very workable

6) Closing statement. There's some debt that will require payoff statements once we have a hard closing date. Rob Bolin is sending me the title commitments now.*[Yvette Wall]* This is your lawyer with submission to Fidelity as closing agent for payoffs

7) Construction Management agreement. Maybe we should finalize after the closing. I'm still open to it just want to make sure I can give you the amount of work and commitment you need. *[Yvette Wall]* Rob & Austin on your plate

8) Profit shares agreement. Have we reviewed this?*[Yvette Wall]* Rob & Austin on your plate

9) Just want to confirm that it is ok that we have some students at our non student buildings. I think Rob Bolin was adding our current list of properties as exempt for the non compete. The other item is determining the duration of the non compete. Obviously if we ever want to do anything in the future we will work with you as a partner.*[Yvette Wall]* Rob & Austin

10) I think the AMEX card is a great way to prevent confusion since we will still have accounts at Gillman and Home Depot. We will change our account names from Park Place to something else but this will take a little time.*[Yvette Wall]* AMEX has been ordered and will be ready this week. We will open accounts at Gillman & Home Depot with the AMEX on file as payment source, we can open the accounts as Amicus Ohio (to avoid Park Place confusion for future charges)

11) The attorneys are still finalizing the title issues and objections.*[Yvette Wall]* Rob & Austin

12) Files. I will eventually need all files up to the close date in case of an audit. We can keep recent files at the office since you will need them also for various reasons.*[Yvette Wall]* Sounds good, no issues

13) How will the closing company be making the payment(s)? To Tres Walnut or to Tom and Heather? We still need to determine a price for each property. You mentioned before you were ok with me doing this.*[Yvette Wall]* Rob & Austin

14) 211 N University is not finished. We are currently installing mechanicals and the mason is starting soon. How are we finalizing those costs? *[Yvette Wall]* Rob & Austin

15) Offices for Tom and Jerry Baumann. I would like to figure out something for a 5 year period. *[Yvette Wall]* Rob & Austin

16) We currently provide housing for Joe Davis and John Broering in two of our non student properties.*[Yvette Wall]* Rob & Austin

17) We have a warehouse/shop building that we both can continue to utilize for storage, wood working, etc.*[Yvette Wall]* Rob & Austin

18) Transition Period after the closing. What type of help (if any) would you like from me and Heather.*[Yvette Wall]* Full time. Just kidding.

19) Deed and legal description review. Rob Bolin is sending to me now.*[Yvette Wall]* OK

[Yvette Wall] – Need to establish the tenants pre-paid balances – by tenant

[Yvette Wall] – Need to establish the tenants open receivables if we are collecting and balances owed to you

[Yvette Wall] – Renee and I will work on change of utilities, etc. once closing takes place

[Yvette Wall] – Renee and Ashley are working on security deposits tie outs, we will need to be updated on all new leases that have been signed with deposits, etc. since the last document you had sent with SD information

[Yvette Wall] – Tom – do you need me to come out next week to assist in the spreadsheets for pre-payments, etc. or shall I postpone to the week of closing, just need to change my plans if you do not need me

[Quoted text hidden]



Tom Kacachos <tkacachos@parkplacerealestate.net>

## Construction Management Agreement

**Tom Kacachos** <tkacachos@parkplacerealestate.net>										Wed, Mar 2, 2022 at 7:54 AM
To: Austin Brooks <austin@amicus-properties.com>, Rob Abelson <rob@amicus-properties.com>, Heather Kacachos <hkacachos@parkplacerealestate.net>, Yvette Wall <yvette@wallcpa.us>

Can we focus on this later to save time? My issue is with Section 8 and payment based upon COA. Payments should be based upon a percentage of completion schedule.

--
Tom Kacachos, P.E.
Vice President
Park Place Real Estate
116 E High Street
Oxford, OH 45056
(513) 839-0344
www.ParkPlaceRealEstate.net

Company for renovations to each Property during the term hereof, which construction management fee shall be payable to Construction Manager upon the issuance of a certificate of occupancy or actual occupancy by tenants at the Property, whichever is earlier.

7. <u>Expenses</u>. Construction Manager shall be responsible for its own expenses incurred in connection with providing the Services.

8. <u>Non-Solicitation</u>. The Construction Manager agrees that during the Term and for a period of two years following the termination or expiration of this Agreement, the Construction Manager shall not, directly or indirectly, for such party or on behalf of, or in conjunction with, any third party, solicit or induce, engage, or attempt to solicit or induce or engage any employee or independent contractor of the Company to terminate such employment or engagement or otherwise interfere with the business of the Company.

9. <u>Confidentiality</u>. Except in the performance of its duties hereunder, Construction Manager agrees that it shall not disclose any of the Company's or its affiliates confidential or propriety information unless and until such information becomes generally known, nor shall Construction Manager utilize any such information for any purpose except as set forth in Section 2 of this Agreement.

10. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio without giving effect to its principles of conflicts of law.

11. <u>Notices</u>. Any notices, requests, demands, and other communications (collectively, "Notices") under this Agreement shall be sent by first-class mail, or by nationally recognized overnight courier for overnight delivery, by personal delivery. All Notices shall be sent to the applicable party at the address provided therefore on the first page hereof, in all cases with postage or other charges prepaid. Any such properly given Notice shall be effective on the earliest to occur of receipt, one (1) business day after delivery to a nationally recognized overnight courier, or three (3) business days after deposit in the U.S. Mail.

12. <u>Validity</u>. If any provision hereof shall be held to be invalid or unenforceable, such invalidity or unenforceability shall not affect the validity or enforceability of any other provision hereof or any other portion of the invalid or unenforceable provision. To the extent required, any invalid or unenforceable provision of this Agreement, or any portion thereof, shall be deemed modified by the parties hereto to the minimum extent necessary to comply with applicable law and preserve the intent of the parties.

13. <u>Nondisclosure</u>. The terms of this Agreement shall be kept confidential and no party shall reveal its contents to any third party except as may be required by law, regulation or judicial, administrative or arbitral proceeding.

14. <u>Assignment</u>. This Agreement shall not be assignable by Construction Manager for any reason whatsoever without the prior written consent of the Company.

15. <u>Entire Agreement</u>. This Agreement contains the entire understanding of the parties and cannot be altered or amended except by an amendment duly executed by all parties hereto. This

14237505.1