# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **AMICUS MIAMI OF OHIO, LLC** | : | Case No. 1:22-cv-00355 |
| **Plaintiff** | | **Judge Hopkins** |
| | : | |
| vs. | | |
| **HEATHER HOELZER KACACHOS,** *ET AL.* | : | **DEFENDANTS' PROPOSED STATEMENT OF UNDISPUTED FACTS RELATING TO MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| **Defendants** | | |
| | : | |
| | : | |

Defendant/Counter-claimants Thomas and Heather Kacachos ("the Kacachoses") propose the following statement of undisputed facts relevant to the Fed. R. Civ. P. 56 Motion pending before the Court (ECF Doc. 40):

1. The parties' Purchase and Sale Agreement ("PSA") referenced and integrated five ancillary agreements. The entire agreement would have covered not only a real estate sale, but also a 10-year business relationship between the Kacachoses and Amicus. Amicus First Amended Verified Complaint, Ex. A, PSA at §§ 4.4; 8.2 (ECF Doc. 22 and 22-1); *see also* Kacachos Answer and Counterclaim (ECF Doc. 24); Amicus Answer and Affirmative Defenses to Defendants' Counterclaim (ECF Doc. 27) at ¶ 7.

2. The Construction Management, Non-Compete, Finder's Fee, and Profit Interest agreements remained to be "finalized" when the PSA was signed, and the final ancillary agreements were conditions precedent to closing.

3. The PSA called for transfer of real estate through what is commonly referenced as a "drop down" transfer. PSA at §§ 1.1; 3.13 (ECF Doc. 22-1); *see also* Amicus Answer to Counterclaim (ECF Doc. 27) at ¶ 24.

4. Of the five Ancillary Agreements referenced in the PSA, only one was tendered with the PSA for signature. Kacachos Answer and Counterclaim (ECF Doc. 24), at ¶7 of Counterclaim; *see also* Amicus Answer to Counterclaim (ECF Doc. 27) at ¶ 7.

5. The table below accurately states the names of the Ancillary Agreements, the corresponding sections of the PSA in which they are referenced, and the circulation date upon which Amicus first submitted some proposed version to the Kacachoses.

| Agreement | PSA Section Ref. | Circulation Date |
|---|---|---|
| Property Management – Schedule 4.4(c) | 4.4(e); 8.2(g) | with PSA |
| Non-Compete – Schedule 8.2(w) | 8.2(w) | 12/07/2021 |
| Construction Management – (Not scheduled/Not attached) | 4.4(d); 8.2(g) | 12/09/2021 |
| Finder's Fee – Schedule O | 4.4(a); 8.2(f) | 12/23/2021 |
| Profit Interest – Schedule Q | 4.4(f); 8.2(i) | 02/16/2022 |

6. Four of the ancillary agreements remained in negotiation at the time the PSA was signed and were never agreed to. Amicus Answer to Counterclaim (ECF Doc. 27), at ¶ 6.

7. Amicus' representatives, including its principals, Rob Abelson and Austin Brooks; a certified public accountant working on Amicus' behalf, Yvette Wall; and legal counsel working for Amicus, including Donald Lussier and Peter Gelzinis, communicated about the overall transaction and various agreements with the Kacachoses and their

representatives, including attorneys Rob Bolin and Jack Grove, through written communications, including letters, electronic mail, including attachments thereto, and text messages.

8. On January 21, 2022, Amicus executed a financing extension of the inspection period. Kacachos Aff. at ¶ 6 and Ex. 3 (ECF Doc. 41 and 41-3).

9. The financing extension executed on January 21, 2022 caused a corresponding delay of any closing.

10. Amicus did not seek any closing during the extension of the financing period.

11. On January 31, 2022, Amicus sent the Kacachoses a Buyer's Objection Letter, further delaying any closing. *See* Kacachos Aff. at Ex. 3 (ECF Doc. 41-3).

12. Amicus did not send the Kacachoses' legal counsel a Notice to Proceed until February 9, 2022. *See* Kacachos Aff. at ¶ 7 and Ex. 3 (ECF Doc. 41 and 41-3).

13. On February 16, 2022, Tom Kacachos sent Amicus rent proration and deposit numbers in preparation for a March 1 closing. Amicus did not send a closing statement in response. Kacachos Aff. at ¶ 14 and Ex. 5 (ECF Doc. 41 and 41-5).

14. Amicus proposed a rent proration method that was not based on the actual leases and gave Amicus an extra $300,000, in an e-mail and accompanying spreadsheet sent by Yvette Wall to the Kacachoses, on February 17, 2022. Kacachos Aff. at ¶ 15 and Ex. 5.

15. The Wall e-mail and spreadsheet increased Amicus' claim for pro-rated rent due at closing to $1,817,247. Kacachos Aff. at ¶ 15 and Ex. 5.

16. Amicus' rent proration method was not based on the actual duration of the leases. Kacachos Aff. at ¶¶ 15-16 and Ex. 5.

17. Amicus' rent proration proposal change caused the parties to debate the $300,000 difference from February 17 to March 1, which delayed the closing process. Kacachos Aff. at ¶ 15 and Ex. 5.

18. Amicus attributed its approach to rent proration to demands imposed by its lender. Kacachos Aff. at ¶ 16 and Ex. 5 (e-mail string between the Kacachoses' and Amicus' representatives, including Rob Abelson and Yvette Wall).

19. The PSA specified how rents were to be prorated, with PSA § 3.8 stating apportionment of "full value shall be adjusted and prorated as of the closing date." PSA § 3.12 provided that proration "shall be based on the number of days of ownership of the property in the period applicable to the apportionment[.]" (ECF Doc. 22-1).

20. Amicus sought an immediate closing from March 1 after 5 PM to the morning of March 2, 2022. *See* Amicus First Amended Verified Complaint, Ex. J (ECF Doc. 22-10). Attorneys for both sides agreed later that day to a March 15, 2022 closing date.

21. On March 3, 2022, Amicus canceled the March 15, 2022 closing after the Kacachoses informed them that the City of Oxford issued alleged notices of violations affecting five houses in the overall portfolio. Kacachos Aff. at ¶¶ 20-21; *see also* Ex. 7 thereto (ECF Doc. 41 and 41-7).

22. On March 7, Amicus requested a $550,000 escrow to be funded by the Kacachoses due to the City of Oxford violations. According to PSA § 7, this option should have been Amicus' cost. Kacachos Aff. at ¶ 22.

23. On March 15, Amicus requested a 90-day PSA extension. Kacachos Aff. at ¶ 23 and Ex. 8 (ECF Doc. 41 and 41-8).

24. On March 17, Amicus requested a March 24, 2022 closing. On March 18, 2022, Tom Kacachos provided rent prorations, deposits and sales price asset allocations. Again, Amicus did not respond with a closing statement per the PSA's requirements. Kacachos Aff. at ¶ 24 and Ex. 10 (ECF Doc. 41 and 41-10).

25. The PSA required the escrow agent to draft a final closing statement at least 5 days prior to closing. (PSA § 3.15).

26. Neither Amicus nor the escrow agent ever furnished a closing statement that included closing related charges, prorations of rent, and the full range of information required to close an Ohio real estate transaction.

27. Amicus was unwilling to compromise on the duration of the Non-Compete agreement and refused (prior to the expiration of the PSA on March 25, 2022) anything less than 5 years.

28. Amicus' legal counsel Donald Lussier received a letter dated March 23, 2022 from the Kacachoses' legal counsel, Jack Grove, in the form attached as Exhibit 12 to the Kacachos Affidavit (ECF Doc. 41-12).

29. The PSA expired on March 25, 2022.

30. In its proposed allocation of the purchase price recited in the PSA as between real estate and non-real estate, Amicus (on May 2) assigned a value of $21.5 million to goodwill. Kacachos Aff. at ¶ 31 and Ex. 16 (ECF Doc. 41 and 41-16).

31. The Kacachoses (on March 18) allocated $75 million to real estate. Kacachos Aff. at ¶ 31 and Ex. 16 (ECF 41 and 41-16).

32. The parties never reached a final resolution on allocation to realty and goodwill.

33. Amicus' counsel Donald Lussier proposed a "modest price adjustment/credit was appropriate" due to the City of Oxford alleged violation notices. *See* Kacachos Aff. at ¶ 29 and Ex. 13 (ECF Doc. 41 and 41-13).

34. Amicus requested, by and through its counsel, adding a walk away clause to the PSA excusing its further performance. *See* e-mail of April 5 from Donald Lussier to Jack Grove, attached as Ex. 11 to Kacachos' Answer and Counterclaim (ECF Doc. 24 and 24-11); *see also* Amicus' Answer to Counterclaim, at ¶ 31 (ECF Doc. 27).

35. Both parties continued to negotiate terms into May 2022. Kacachos Aff. at ¶ 33 (ECF Doc. 41).

36. Up to at least May 2, 2022, Amicus never dropped its insistence upon the various ancillary agreements. Kacachos Aff. at ¶ 31.

37. Amicus does not have any documentary or other evidence that the Kacachoses have ever listed the properties in the portfolio in this dispute for sale to any other purchaser, at any time between October 2021 and the present.

38. Amicus does not have any text, e-mail or other written communication by which the Kacachoses, or either of them, demanded a higher price for the portfolio.

39. Neither of the Kacachoses orally demanded a higher price for the portfolio after the PSA was signed.

40. Amicus admitted that it requested to amend the PSA after that instrument was signed. Amicus' Answer to Counterclaim at ¶ 31.e. (ECF Doc. 27).

Respectfully submitted,

*/s/ Edward P. Akin*
Edward P. Akin  0074357
Aronoff, Rosen & Hunt
2200 U.S. Bank Tower
425 Walnut Street
Cincinnati, OH 45202
(513) 241-0400
(513) 241-2877 (fax)
epakin@arh-law.com
*Trial Attorney for Defendants*

CERTIFICATE OF SERVICE

I certify this document was filed electronically on December 21, 2022, and served through the Court's ECF System on Aneca E. Lasley, aneca.lasley@icemiller.com.

*/s/ Edward P. Akin*
Edward P. Akin