UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
(Cincinnati)

| | |
|---|---|
| AMICUS MIAMI OF OHIO, LLC | |
| Plaintiff, | |
| v. | Case No. 1:22-cv-355 |
| HEATHER HOELZER KACACHOS, et al., | Judge Jeffery P. Hopkins |
| Defendants. | Magistrate Judge Karen L. Litkovitz |

**<u>PLAINTIFF'S REPLY IN SUPPORT OF ITS</u>**
**<u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

Following this Court's entry of a temporary restraining order preventing Defendants Heather Hoelzer Kacachos and Tom Kacachos (the "Sellers") from violating the Limited Liability Company Membership Interests Purchase and Sale Agreement ("PSA") or transferring the properties at issue (Dkt. No. 33), the Court asked the Parties by email whether they could reach an agreement regarding preliminary injunctive relief. The Parties reached an agreement not only regarding the entry of preliminary injunctive relief, but also regarding the filing of a Motion for Judgment on the Pleadings to get before the Court Sellers' principal, albeit frivolous, defense to liability in the case—namely, whether the PSA constitutes a valid and enforceable contract.[1] *See e.g.* Exhibit A, Email to the Court on October 18, 2022 (identifying Plaintiff Amicus Miami of Ohio, LLC's ("Amicus" or "Plaintiff") interest in "briefing the pinnacle legal issue in this case (i.e., whether as a matter of law the Purchase Sale Agreement constitutes a valid and enforceable

---

[1] The capitalized terms used herein have the meaning ascribed to them in Amicus's Motion for Judgment on the Pleadings (the "Motion").

1

contract) prior to engaging in costly discovery" so as to "not only save the parties legal fees, but also be more efficient for the Court"). This legal issue is the focus of Amicus's Motion for Judgment on the Pleadings (the "Motion").

In response to Amicus's Motion, Sellers sought to introduce a myriad of false allegations that live outside the four corners of the PSA and are irrelevant to the Motion. But no amount of allegations introduced by Sellers can change the plain terms of the PSA itself, which demonstrate that *as a matter of law* the PSA is a legally binding, valid, and enforceable contract. In particular, there is no dispute that Sellers demonstrated their assent to the 31-page PSA by executing it (and initialing every page); there is no dispute that the agreement was supported by adequate consideration ($75 million payable to Sellers); and there is no dispute that in Section 4(c) of the PSA Sellers unambiguously represented that "*[t]his Agreement has been duly authorized, executed and delivered by all of the Seller Parties*" and is a "*legal, valid and binding obligation[] of the Seller Parties*." (Emphasis added.) Notwithstanding Sellers' litigation position, there is nothing in the PSA that suggests that it was a "mere agreement to agree"; the PSA states expressly the opposite, that "this Agreement . . . *embodies the entire agreement* between Sellers and Buyers with respect to the transactions contemplated in the Agreement." PSA § 12.8 (emphasis added).

Once this "unenforceability" defense is rejected, nothing stands in the way of resolving the case in Amicus's favor. Breach is effectively conceded, as it must be. The PSA straightforwardly required Sellers to "sell all of the [Property] Interests to [Amicus] . . . for the [$75 million] Purchase Price" on the Closing Date. There is no dispute that Sellers did not. While Sellers may now want to account for alleged "[c]hanging circumstances" including "market conditions" and "inflation," the contract the Parties negotiated and executed did not give them such a termination right. Defs.' Memo. In Opp'n to Pl.'s Mot. for J. on the Pleadings ("Opp."), Dkt. 47, at 7. In fact, those risks—

which ran in both directions—are precisely why the Parties wanted to lock into a deal while they expended substantial resources and forwent other opportunities while conducting due diligence and moving toward closing. "The Court will not re-write the parties' contract because [Sellers have] now decided [they] made a bad deal." *New Lansing Gardens Hous. Ltd. P'ship v. Columbus Metro. Hous. Auth.*, No. 2:20-CV-2475, 2021 WL 5746356, at *4 (S.D. Ohio Sept. 14, 2021).

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) enables the Court to make an early ruling based on the facts undisputed in the pleadings and/or based on issues of pure law. Here, Amicus's motion relies on facts that were admitted in Sellers' Answer and asks this Court to rule on pure questions of law that are based on the plain language of the PSA itself. This is not only possible, but also reasonable. Courts "constru[e] the material allegations of the pleadings and all reasonable inferences in the light most favorable to the non-moving party," *Kenyon v. Union Home Mortg. Corp.,* 581 F. Supp. 3d 951, 955 (N.D. Ohio 2022), but they need not accept "[g]eneral averments of conclusions . . . when the pleadings are at variance and inconsistent with the clear and unambiguous language *of the contract filed as an exhibit thereto." Consolidated Jewelers, Inc. v. Standard Fin. Corp.,* 325 F.2d 31, 36 (6th Cir. 1963) (emphasis added). As a result, despite Sellers' claim to the contrary, motions for judgment on the pleadings are granted for breach of contract disputes.[2]

---

[2] Defendants claim that Rule 12(c) motions for judgment on the pleadings are rarely filed and never won, but rely on precedent from the U.S. Court of Appeals for the District of Columbia for that claim. A review of the Litigation Analytics section of WestLaw for the Southern District of Ohio demonstrates that these motions are often heard and frequently granted, including in favor of plaintiffs. As an example, Judge McFarland, who was initially assigned to this case and had been on the bench barely more than four years, decided 18 motions for judgment on the pleadings and granted more than half of them. These include cases where Judge McFarland has ruled that a contract is enforceable and that the terms of such contract warrant ruling in favor of a particular party, and those rulings have been upheld by the Sixth Circuit. *See, e.g.* Order Granting Defendant PNC Bank's Motion for Judgment on the Pleadings, Dkt. No. 17, *Edmund F. Turek Trust IMA* v. *PNC Bank, N.A.*, Case No. 1:18-cv-739 (June 10, 2020 S.D. Ohio) (McFarland, J.) *affirmed id.* at Dkt. No. 21. This is consistent with the practice in the Southern District of Ohio as a whole, where most judges have granted motions for judgment on the pleadings, including in favor of plaintiffs

3

In fact, this Court already rejected a similar argument in *Stonebridge Operating Co., LLC v. Antero Resources Corp*, 510 F. Supp. 3d 567 (S.D. Ohio 2020). In that case, which is remarkably similar to the posture here, the defendant disputed whether there had been a meeting of the minds sufficient to form a binding contract when the parties executed a Purchase and Sale Agreement, and the plaintiff moved for judgment on the pleadings for a determination that the contract was binding. *Id.* at 575. The Court ruled in favor of the plaintiff on that issue, expressly rejecting the defendant's contention that a "determination of whether there was a meeting of the minds is never appropriate for decision on the pleadings." *Id.* In finding that it was appropriate to make a ruling on the pleadings and that the PSA in that case was binding, the *Stonebridge* court recognized that "[w]hen there is a written contract, Ohio courts hold that 'the signing of an agreement and acquiescence in its effect generally demonstrates the existence of a meeting of the minds.'" *Id.* at 577 (quoting *NetJets, Inc. v. Binning*, 10th Dist. No. 04AP-1257, 2005-Ohio-3934, 2005 WL 1806460, ¶ 8).

In that case,

> The PSA explicitly states that it includes the entire agreement between the parties and that it is binding . . . . [T]he PSA was indisputably negotiated and renegotiated, signed, and partially performed by two sophisticated parties. The PSA unambiguously identified the execution date . . . the parties . . . , the subject matter . . . , the number of acres . . . , [and] the total cost amount to be exchanged . . . .

*Stonebridge*, 510 F. Supp. 3d at 578. No more was needed in *Stonebridge* to grant judgment on the pleadings, and nothing more is needed here. The two cases are on all fours. *See also Williams v. CitiMortgage, Inc.,* 498 F. App'x 532, 536 (6th Cir. 2012) (holding that a written contract trumps

---

where appropriate. *See, e.g.*, Opinion and Order Granting Plaintiff's Motion for Judgment on the Pleadings, Dkt. No. 58, *The Huntington National Bank v. Guishard, Wilburn & Shorts, LLC et al.*, Case No. 2:12-cv-1035 (Dec. 9, 2014, S.D. Ohio) (Marbley, J.).

4

disputed allegations in a pleading (quoting *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend,* 163 F.3d 449, 454 (7th Cir. 1998))).

## II. ARGUMENT

The PSA is a valid, enforceable contract. That determination is one that can be made as a matter of law based on the four corners of the PSA itself, which unambiguously demonstrates the Parties' intent to be bound to its terms. Sellers' arguments to the contrary are transparent made-for-litigation efforts to extricate themselves from a transaction they no longer favor due to changed market conditions. The Court should resolve this issue on the parties' pleadings. Once it does, Sellers' breach of their most fundamental obligation under the PSA—to convey the subject properties to Amicus—is equally plain, warranting judgment for Amicus and against Sellers.

### A. This Court Can Determine At This Stage That The PSA Is Valid And Enforceable As A Matter Of Law Because None Of The Facts Offered By Sellers Undermine The Plain Terms Of The PSA.

Ohio law requires only an objective meeting of the minds for a contract to be binding. *216 Jamaica Ave., LLC v. S & R Playhouse Realty Co.*, 540 F.3d 433, 440 (6th Cir. 2008). Conversely, "Ohio law does not require contracting parties to share a subjective meeting of the minds to establish a valid contract; otherwise, no matter how clearly the parties wrote their contract, one party could escape its requirements simply by contending that it did not understand them at the time." *Id.* That is why "[t]he intent of the parties is presumed to reside in the language they choose to use in their agreement." *New Lansing Gardens Hous. Ltd. P'ship v. Columbus Metro. Hous. Auth.*, No. 2:20-CV-2475, 2021 WL 5746356, at *3 (S.D. Ohio Sept. 14, 2021), *aff'd*, 46 F.4th 514 (6th Cir. 2022) (quoting *Graham v. Drydock Coal Co.*, 76 Ohio St. 3d 311, 313, 667 N.E. 2d 949, 952 (1996)). Therefore, so long as those terms are "not ambiguous, courts are constrained to apply the plain language of the contract." *Id.* (quoting *City of St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St. 3d 387, 875 N.E. 2d 561, 566 (2007).). Sellers do not and cannot argue

that the PSA here is ambiguous, and therefore this Court is constrained to apply the plain language of the PSA, which can appropriately be done at this stage of the case because the PSA itself is incorporated into the pleadings.

As an initial matter, as discussed at length in Amicus's Motion, Sellers negotiated, agreed to, initialed every page of, and signed the PSA. Moreover, Sellers agreed to a clause in the PSA that explicitly stated that:

> ***This Agreement has been duly authorized, executed and delivered by all of the Seller Parties*** and all consents required under any of the Seller Parties' which are legal entities' organizational documents, operating agreements or by laws have been obtained.

PSA § 4.1(c) (emphasis added). "When there is a written contract, Ohio courts hold that 'the signing of an agreement and acquiescence to its effect generally demonstrates the existence of a meeting of the minds.'" *Stonebridge Operating Co., LLC v. Antero Res. Corp.*, 510 F. Supp. 3d 567, 576 (S.D. Ohio 2020) (quoting *NetJets, Inc. v. Binning*, 10th Dist. No. 04AP-1257, 2005-Ohio-3934, 2005 WL 1806460, ¶ 8); *see also Bruzzese v. Chesapeake Expl., LLC*, 998 F. Supp. 2d 663, 674 (S.D. Ohio 2014) (noting that "parties ordinarily manifest their assent to a written contract by signing it"). Notably, Sellers do not contest that they signed the PSA on the signature page. Nor do they suggest that the signatures or initials were not their own. Nor do they hint that they were pressured to sign the document or that they ever attempted to retract their signatures. And Sellers fail to cite to a single case refuting that their signature on the PSA should indicate a meeting of the minds to the Court.[3]

---

[3] Sellers weakly take issue with the fact that they did not initial each and every page of every exhibit to the PSA. Opp. at 12. But Sellers also fail to cite any principle of law or case that would require each page of every exhibit to be initialed. It is clear from the PSA itself that Sellers initialed every page of the PSA, signed at the end of the PSA, and agreed explicitly that the PSA was duly authorized, executed, and delivered. Sellers' attempt to now escape the consequences of the binding contract they agreed to many months ago by pointing out that they did not initial every page of every exhibit only confirms that Sellers are clearly in breach. If every contract was treated the way that Sellers treat the PSA, every dispute would go to trial and parties in Ohio would have no assurance as to the sanctity of contracts.

Sellers try to paint the PSA as a "mere agreement to agree." This is again disproved by the text of the PSA itself, which states that it is a "***legal, valid and binding obligations of the Seller Parties***" and reflects the "***entire agreement***" of the Parties. PSA §§ 4(c), 12.8 (emphasis added); *see Stonebridge*, 510 F. Supp. 3d at 576 (relying in part on virtually identical provisions in ruling that there is meeting of the minds). Regardless, what Ohio law requires in order for a contract for the sale of property to be enforceable is far less than Sellers seem to believe. The essential terms of a contract include the subject matter, identity of the parties bound, consideration, price, and quantity. *See N. Side Bank & Tr. Co. v. Trinity Aviation, LLC*, 153 N.E.3d 889, 895 (2020); *see also Areawide Home Buyers, Inc. v. Manser*, 2005-Ohio-1340, ¶ 35 (Ohio Ct. App. 7th Dist. 2005) (explaining that, for agreements involving property, the courts generally look for a definite price, including terms of payment, and that the property is adequately described). The PSA neatly sums up each of these requirements: "Seller hereby agrees to (i) organize HoldCo, (ii) cause the Ground Lessees to acquire good and clear record and marketable fee simple title to their respective properties, (iii) cause the Property Owners to convey all of the Property to HoldCo, and (iv) sell all of the HoldCo Interests to Buyer, and Buyer, or its nominee, agrees to buy all of the HoldCo Interests from Seller, for [$75 million]." PSA §§ 1.1, 3.1. Because Sellers cannot overcome the meeting of the minds apparent on the face of the PSA, this Court can and should conclude as a matter of law that the PSA is binding.

Although Sellers dispute some of the factual allegations in Amicus's Complaint, those denials cannot change the clear and unambiguous language of the PSA. In fact, the only case that Sellers rely on in their attempt to argue that denying Amicus's factual allegations precludes judgment on the pleadings, actually supports Amicus. Even that case, *Qwest Communications Corp. v. City of Berkeley*, 208 F.R.D.288, 291 (N.D. Cal. 2022), which was entirely distinct from

the straightforward contract case at issue here, recognized that "materials properly attached to a complaint as exhibits may be considered." More importantly, the Sixth Circuit has taken this same approach and also gone further. The Sixth Circuit has repeatedly held for decades that written instruments, such as the PSA, trump the allegations of the Parties and that courts need not accept "[g]eneral averments of conclusions. . . when the pleadings are at variance and inconsistent with the ***clear and unambiguous language of the contract filed as an exhibit thereto***." *Consolidated Jewelers, Inc. v. Standard Fin. Corp.,* 325 F.2d 31, 36 (6th Cir. 1963) (emphasis added). Therefore, while Sellers may deny some of the factual allegations in Amicus's Complaint, Sellers' denials cannot overcome what is clear and unambiguous in the PSA.

For the same reasons, Sellers' attempts to add to the PSA through factual allegations in their Opposition to this Motion—such as by claiming it was intended as a ten-year strategic relationship, not a mere sale of property—also fail. Under Ohio law, the intent of the Parties does not depend on what one party wishes they had agreed to, but instead will "reside in the language they choose to use in their agreement." *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313, 667 N.E.2d 949, 952 (1996). As a result, the Court need "look no further than the [PSA] itself to find the intent of the parties." *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 129 Ohio St. 3d 397, 404, 953 N.E.2d 285, 292 (2011). That is why this matter can and should be resolved as a matter of law at this stage in the litigation.

> **i. The Validity Of The PSA Is Not Affected By The Ancillary Agreements Nor By The Prolonged Closing Process, Regardless Of The Cause.**

Sellers' continued suggestion that the ancillary agreements, or the "side agreements" according to Mrs. Kacachos, somehow prevent the enforcement of the PSA is contrary to law and to the plain language of the PSA. In support of its claim that the ancillary agreements were

incorporated into the PSA, Sellers cite to Section 12.8 of the PSA. Opp. at 4. Section 12.8 is an integration clause:

> 12.8 <u>Integration</u>. This Agreement (including the schedules and exhibits) embodies the entire agreement between Seller and Buyer with respect to the transactions contemplated in this Agreement, and fully supersedes all prior written or oral agreements and understandings between the parties pertaining to such subject matter.

Sellers do not cite to any case law that would enable this Court to conclude that the Agreement's reference to the ancillary agreements means that the PSA is unenforceable. To the contrary, Ohio has long recognized the validity of these agreements, as an agreement to make an agreement is *not* unenforceable and instead "depends on whether the parties have manifested an intention to be bound by its terms and whether these intentions are sufficiently definite to be enforced." *Normandy Place Assocs. v. Beyer*, 2 Ohio St. 3d 102, 105, 443 N.E.2d 161, 164 (1982).[4] Much like Ohio law disfavors releasing parties from their voluntary contractual obligations, so too does it disfavor conditions precedents. *Hiatt v. Giles*, 2005-Ohio-6536, 2005 WL 3346172, ¶ 23 (Ohio Ct. App. 2nd Dist. 2005). For this reason, Ohio Courts will generally not read such clauses into contracts "absent explicit intent to establish a condition precedent." *Evans, Mechwart, Hambleton & Tilton, Inc. v. Triad Architects, Ltd.*, 2011-Ohio-4979, ¶ 15, 196 Ohio App. 3d 784, 792–93, 965 N.E.2d 1007, 1013–14 (Ohio Ct. App. 10th Dist. 2011); *see also* 13 Lord, Williston on Contracts (4th Ed. 2000) 429, Section 38:13 ("Contract conditions are disfavored, and will not be found in the absence of unambiguous language indicating an intention to create a conditional obligation."). That an agreement maintains "some degree of indefiniteness and some degree of uncertainty" is

---

[4] Similarly, it is a century's old rule in Ohio that where parties have entered into an agreement "and one party, without the consent of the other, does some act or makes some new arrangement which prevents the carrying out of the contract according to its terms" that party cannot in turn attempt to escape their obligations. *Suter v. Farmers' Fertilizer Co.*, 100 Ohio St. 403, 411, 126 N.E. 304, 306 (1919). Therefore, given the Kacachoses' efforts to prevent closing under the contract or repeatedly shifting on the ancillary agreements, the fact that some remained incomplete or unsigned at closing bears no impact on the enforceability and validity of the PSA negotiated and signed by the Parties.

inherent in all contracts and will not in itself serve as a basis for a condition precedent nor for finding a contract to be unenforceable. *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (2002).

As addressed above, the only essential terms for a contract involving property are a definite price and an adequate description of the property. *See Areawide Home Buyers, Inc. v. Manser*, 2005-Ohio-1340, ¶ 35 (Ohio Ct. App. 7th Dist. 2005). And while partial performance is not a necessary requirement to enforce a contract, Sellers' attempt to get out of a contract based on a purportedly inadequate description after performance has begun cannot succeed as a matter of law where some partial performance has occurred. *See Stonebridge Operating Co., LLC v. Antero Res. Corp.*, 510 F. Supp. 3d 567, 577 (S.D. Ohio 2020) (rejecting a claim that "because the parties were unable to more particularly identify those acres on Exhibit A-1 there was no mutual assent" and holding that the party's "admission of its partial performance belies its contention"). Therefore, because the PSA set forth the essential contractual terms and because the parties indisputably began performing, are each independent and adequate reasons why the PSA is binding and enforceable as a matter of law. *See, e.g.*, Opp. at 5 (admitting that Sellers began performing, and claiming that that Sellers were "diligent in performing their duties under the PSA"). Additionally, the reality of the PSA's enforceability is such that: (1) Sellers admit Amicus made repeated deposits into escrow, amounting to a deposit of at least $550,000; (2) the Parties were actively working through due diligence pursuant to the PSA, for months following its execution; (3) the Parties adhered to all necessary procedural processes for amending the PSA; and (4) even Sellers have admitted to efforts to arrange a closing without finalized ancillary agreements. *See* Defs.' Answer ¶¶ 51, 62-65, 77, 82. All of which individually, but most certainly taken as a whole, serve as undisputed evidence of the enforceability of the contract by virtue of partial performance and the inherent binding nature of the PSA.

Moreover, Sellers' claim that the prolonged closing period invalidates the PSA is likewise unsupported by Ohio law. Sellers go to great lengths to point the finger at Amicus for purportedly delaying closing on the PSA. The reality is exactly the opposite, but the reason this can be decided as a matter of law is because the failure to close by the closing date does not dissolve the PSA regardless of who is at fault for the delay. In Ohio, the time of performance is generally not "of the essence" unless the contract specifically states that it is. *Coldwell v. Moore*, 2017-Ohio-526, ¶ 7, 85 N.E.3d 262, 267 (Ohio Ct. App. 7th Dist.); *Brown v. Brown*, 90 Ohio App.3d 781, 784, 630 N.E.2d 763 (Ohio Ct. App. 11th Dist. 1993). Furthermore, when such a clause is missing from a contract, "the fact that a contract contains a specified date or deadline does not automatically make time of the essence." *SRW Env't Servs., Inc. v. Dudley*, 2009-Ohio-3681, ¶ 14 (Ohio Ct. App. 12th Dist. 2009). Sellers now argue that the failure to close by the closing date set forth in the PSA voided the whole contract, but Sellers do not and cannot cite any law in support of that position. Indeed, Ohio law is to the contrary. Because the default under Ohio law is that time is not of the essence, and because nothing in the PSA changed that default presumption, the failure to close by the deadline set forth in the PSA does not nullify the PSA. The PSA remains enforceable as a matter of law.

### ii. Sellers' Claimed Illegality Defense Fails As A Matter Of Law.

Sellers bemoan the fact that they agreed to take on any tax risk associated with the sale contemplated by the PSA and therefore try to claim that the tax exposure they face renders the entire sale illegal. *See, e.g.*, Opp. at 7, 29. It is true that public policy will prevent the enforcement of an illegal contract where performance of the contract violates a statute or act. *Countrymark Coop., Inc. v. Smith*, 124 Ohio App. 3d 159, 164, 705 N.E.2d 738, 741 (1997).[5] But it is not true

---

[5] Sellers set forth a broader statement as to when courts *may* refuse to enforce contracts on grounds of illegality, but Sellers quote the Sixth Circuit decision in *PolyOne Corp. v. Westlake Vinyls, Inc.*, 937 F.3d 692, 701 (6th Cir. 2019)

11

that the PSA here violates any statute or act and, again, this is a determination that of course can and should be made as a matter of law.

Sellers indisputably agreed to use the so-called "drop-down" method of conveyance. Opp. at 21. Sellers indisputably agreed to be solely responsible for the conveyance tax associated with the PSA. PSA § 3.13(i). Sellers indisputably had reputable legal counsel advising them in this transaction. *See* PSA § 12.2 (designating Rob Bolin of Bolin & Troy LLC as agent); *see also* Rob Bolin biography, https://www.bolintroy.com/attorneys-staff/l-robert-bolin/ (detailing thirty years of experience as a lawyer, including real estate law in Ohio). The decision relied upon by Sellers in their argument that the PSA is illegal had indisputably been issued long before the execution of the PSA. *See Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 159 Ohio St.3d 283, 2020-Ohio-353. Specifically, the case was decided on February 6, 2020, a sizable **627 days** before the PSA was signed and executed on October 25, 2021. *Id*.; PSA at p.1. Taken together, the facts apparent on the face of the pleadings demonstrate that Sellers took on the risk of a higher conveyance tax. This does not make the PSA illegal; it just makes Sellers not like the deal. Unfortunately for Sellers, that is not a reason for this Court to re-write the Parties' contract. Moreover, Sellers have not actually demonstrated that the drop-down method is *illegal* as a matter of law, only that is has "drawn sharp criticism." Opp. at 26.[6] A review of the opinion itself demonstrates that the drop-down method is a less effective method to reduce real estate tax expenses, but it does not deem the method illegal or fraudulent. *See generally Columbus City*

---

which was clearly relying on and interpreting Kentucky law. The law in Ohio more narrowly focuses on whether the required performance will violate a statute or act. *See, e.g.*, *Arthur Young & Co. v. Kelly*, 88 Ohio App. 3d 343, 350, 623 N.E.2d 1303, 1307 (reversing a finding of illegality on the basis that, "within the four corners of the agreement," the Court "cannot conclusively state that the employment contract between the parties required appellant to perform an illegal activity"), *cause dismissed*, 67 Ohio St. 3d 1462, 619 N.E.2d 697 (1993).

[6] Although Sellers claim to desire for discovery to proceed, discovery will reveal that as late as May of 2022, Mr. Kacachos confirmed to Amicus in a recorded conversation his understanding that you are "definitively allowed to do" the drop down method and "Ohio attorneys know you're allowed to do it."

*Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision,* Slip Opinion, No. 2020-Ohio-253. It is no surprise then that Sellers' able counsel advising on the transaction had not warned Sellers against entering into an illegal contract. The PSA simply was not and is not illegal as a matter of law.

Even if the PSA were illegal (and it is not), the PSA includes a severability provision that would enable the sale to move forward with the method of conveyance being severed from the contract per the explicit agreement made between the Parties. *See* PSA § 12.4 ("If any portion of this Agreement is held invalid or inoperative, then so far as is reasonable and possible the remainder of this Agreement shall be deemed valid and operative, and, to the greatest extent legally possible, effect shall be given to the intent manifested by the portion held invalid or inoperative."); *see also Toledo Police Patrolmen's Assn., Loc. 10, IUPA v. Toledo*, 94 Ohio App. 3d 734, 740, 641 N.E.2d 799, 803 (1994) ("Courts will enforce a contract to the extent it conforms to the law if part of the consideration is legal and part unenforceable or illegal, and if the contract is severable."); *Gilbert v. Thomas*, 16 Ohio Dec. 9, 13 (Ohio Com. Pl. 1905) ("[W]here part of a contract is illegal, and part legal, that which is legal will stand provided that which is illegal is separable from the balance of the contract.").

It is clear as a matter of law that the performance required by the PSA is not illegal. But even if it were, the PSA must still be enforced to carry out the intent manifested in the legal portion. That would require that the sale continue by a different method. Therefore, Sellers' proclaimed illegality defense—even if it had any weight to it (and it does not)—is not a way out of the sale.

> **B. Sellers' Ongoing Refusal To Sell The Properties That They Agreed To Sell, And To Instead Raise Any And Every Excuse They Can Think Of, Confirms Sellers Are In Breach Of The Contract.**

At bottom, there is no valid legal defense available to Sellers and their ongoing refusal to sell the Portfolio to Amicus is a clear breach of the explicit terms of the PSA. Although Sellers

13

introduce a great deal of facts surrounding the transaction, there is nothing those facts can do to change the plain language of the PSA or the undisputed fact that Sellers refuse to follow through with their obligation to sell the Portfolio to Amicus. And Sellers cannot rely on any precedent to support their ultimate position. The only defense that Sellers raise both in their Answer and in their reply is the defense of illegality, but that defense fails as a matter of law for the reasons discussed above. Without any legally-supportable defenses, Sellers have no excuse for their ongoing breach of the clear and unambiguous terms of the PSA that Amicus laid out in detail in its opening Motion.

### III. CONCLUSION

It is clear from the pleadings that both Parties engaged in extensive negotiations prior to the execution of the PSA, and it is equally clear that both parties signed and executed the PSA with the full understanding on October 25, 2021 that the PSA was meant to be a binding, enforceable contract for the sale of the Portfolio. That Sellers now regret their deal is irrelevant. That inflation and market conditions have changed is irrelevant. What matters is that the Parties signed a PSA that unambiguously evidenced their intent to be bound. Nonetheless, Sellers have refused to sell the Portfolio to Amicus in breach of their unambiguous obligation to do so under the PSA.

For all of the foregoing reasons, Amicus is entitled to judgment on the pleadings.

Respectfully submitted,

*/s/ Aneca E. Lasley*
Aneca E. Lasley (0072366)
ICE MILLER LLP
250 West Street, Suite 700
Columbus, Ohio 43215-7509
(614) 462-1085
(614) 232-6899 fax
Aneca.Lasley@icemiller.com

*Attorney for Plaintiff*

4886-2133-8184.9

**CERTIFICATE OF SERVICE**

      I certify that this document was filed electronically and served through the Court's ECF System upon all counsel of record on this 27th day of January, 2023.

                                    Respectfully submitted,

                                    */s/ Aneca E. Lasley*
                                    Aneca E. Lasley (0072366)

4886-2133-8184.9